727 So.2d 1053 (1999)
HILLCREST PACIFIC CORPORATION, a Florida corporation, and Pacific Atlas Development Corporation, a California corporation, Appellants,
v.
Herbert T. YAMAMURA, Limeco, Inc., a Florida corporation, Terumasa T. Mayama, Apton America, Inc., a California corporation, Kenneth A. Ohara, and New Rex Corporation, a California corporation, Appellees.
No. 97-3364.
District Court of Appeal of Florida, Fourth District.
February 24, 1999.
*1054 John H. Pelzer and Sharon Atlas of the Law Office of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellants.
Susan H. Aprill of the Law Office of Holland & Knight LLP, Miami, for appellees.
TAYLOR, J.
This appeal of the dismissal of a twelve-count complaint arises from the sale and purchase of a golf course in Broward County, Florida. We affirm the order of dismissal because we find that the appellants failed to state a cause of action for fraud in the inducement, breach of fiduciary duty, breach of the duty of fair and honest dealing, and conspiracy. We further find that the trial court did not abuse its discretion in granting the dismissal with prejudice in light of the clear language of the sale and purchase agreement, which contradicted the allegations of the complaint and showed that the appellees did not act as agents for the appellants and did not misrepresent any material facts on which appellants justifiably relied.
In 1990, Pacific Atlas Development Corp. ("Pacific")[1] consulted with Kenneth Ohara, a licensed California real estate salesman, and New Rex Corporation regarding the purchase of a golf course in South Florida. Hollywood Partners, Ltd. ("Seller") owned Hillcrest Country Club and Golf Course (the "Property"), located in Hollywood, Broward County, Florida. Ohara contacted Pacific regarding the potential sale and purchase of the Property, and delivered to Pacific a document entitled "Summary of the Subject Property" (the "Summary"), which was prepared jointly by Ohara, Terumasa Mayama and Herbert Yamamura in English and Japanese.
The Summary stated that the "Proposed Sales Price" of the Property was $9.6 million. It also estimated the Property's annual income and expenses, described the physical facilities and membership, reported the costs of recent renovations, and provided other descriptive data about the Property, including a statement recommending that Pacific purchase the Property to develop its real estate business in South Florida.
After receiving the Summary, in early March 1990, Pacific's president, Yoshio Sawada, met with Ohara, Mayama, and Yamamura ("Appellees") in South Florida. Together they toured the Property and other golf courses in South Florida for comparison purposes. During the meeting, the appellees again told Sawada that the Seller's asking price was $9.6 million. At that time, appellees knew that the Seller had agreed to pay them any amount received from Pacific in excess of $6.2 million as "finder's fees, agency fees, or commissions." This fee or commission agreement was not disclosed to Pacific.
In March of 1990 Pacific expressed its interest in purchasing the Property and negotiated with the Seller's agent, Isidore Jaffe, to purchase the Property for $9.3 million. Subsequently, on April 4, 1990 Pacific and the Seller entered into a Purchase and *1055 Sale Agreement (the "Agreement"), which provided, among other things, that:
1. The buyer could make a full and complete examination and inspection of the Country Club Complex, its use and value;
2. The buyer could inspect the financial records of the Country Club Complex;
3. The buyer could terminate the Agreement "for any reason"except the Seller's defaultafter the inspection and before the closing date and receive a full refund of the $500,000 deposit paid plus interest earned;
4. The parties represented and acknowledged that no real estate broker or other person other than the parties to the transaction was responsible for the making of the transaction and that each party would hold the other harmless from any person claiming that it had dealt with the Buyer or the Seller with respect to the transaction and claiming any commission or finder's fee;
5. The Seller acknowledged that it had utilized the services of Gary Baker and agents of Herbert Z. Marvin and that the Seller was solely responsible for consultation fees due to Gary Baker and agents of Herbert Z. Marvin; and
6. The Agreement contained the entire agreement between the parties and merged and extinguished all prior negotiations.
Pacific and the Seller were both represented by legal counsel. On August 1, 1990, one day after the closing, the Seller's attorney disbursed $2.75 million to Marvin, the appellees' attorney. Marvin transferred $2.6 million to Yamamura, who, in turn, transferred $1.85 million to a Japanese bank. Subsequently, in April 1994, an additional fee of $70,000 was released from funds withheld at the closing to Marvin.
Pacific complains that the appellees made written and oral misrepresentations regarding the Seller's $9.6 million asking price and that the "inflated price" was part of appellees' scheme to share in a secret profit from the transaction. Pacific asserts that it would never have purchased the Property for $9.3 million had it known the Seller would have accepted a lesser amount of approximately $6 million. In February 1997, Pacific filed a twelve-count amended complaint against appellees for: fraud in the inducement, breach of duties of fair and honest dealing, breach of fiduciary duties, breach of duty as plaintiff's agents, fraudulent inducement and concealment in a dual agency capacity, breach of duties in a dual agency capacity, and a corresponding conspiracy count to each of the above counts. The trial court dismissed the amended complaint in its entirety for failure to state a cause of action.
Initially, we note that because the issue on appeal concerns the propriety of granting a motion to dismiss, we must treat all allegations of the complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff. Orlando Sports Stadium, Inc. v. State, 262 So.2d 881 (Fla. 1972). Pacific, the plaintiffs below, argue that the amended complaint sufficiently states a claim against the defendants/appellees for fraud in the inducement because it alleges that the appellees made a material misrepresentation when they quoted the "Proposed Sale Price" as $9,600,000, knowing the falsity of that statement, with the intent to induce Pacific to rely on the "inflated price," and that Pacific was injured as a result.
To state a cause of action for fraud in the inducement, a plaintiff must allege the following:
1. A misrepresentation of a material fact;
2. That the representor of the misrepresentation knew or should have known of the statement's falsity;
3. That the representor intended that the representation would induce another to rely and act on it; and
4. That the plaintiff suffered injury in justifiable reliance on the representation.
Lou Bachrodt Chevrolet, Inc. v. Savage, 570 So.2d 306 (Fla. 4th DCA 1990).
The Agreement, which is attached as an exhibit to the amended complaint, is deemed a part of the amended complaint and must be reviewed as such. Rule 1.130(b), Florida Rules Civil Procedure provides that "[a]ny exhibit attached to a pleading shall be considered a part thereof for all purposes." See Ginsberg v. Lennar Florida Holdings, *1056 Inc., 645 So.2d 490, 494 (Fla. 3d DCA 1994), rev. denied, 659 So.2d 272 (Fla.1995); Len Hazen Painters, Inc. v. Wood-Hopkins Constr. Co., 396 So.2d 1233 (Fla. 1st DCA 1981). Moreover, as the case of Harry Pepper & Assocs., Inc. v. Lasseter, 247 So.2d 736, 736-37 (Fla. 3d DCA 1971), instructs:
[if there] is an inconsistency between the general allegations of material facts in the... complaint and the specific facts revealed by the exhibit [attached or referred to in the complaint] ... they have the effect of neutralizing each allegation as against the other, thus rendering the pleading objectionable.
In this case, the Agreement plainly contradicts the allegations of the complaint and is fatally inconsistent with Pacific's claim of fraud in the inducement. Although Pacific alleges that the appellees misrepresented the "price" of the Property, the price is clearly stated in the Agreement. Furthermore, the Agreement contains an integration clause that expressly extinguishes all prior negotiations and "sales pitches." A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract. See Englezios v. Batmasian, 593 So.2d 1077 (Fla. 4th DCA 1992); Greenwald v. Food Fair Stores Corp., 100 So.2d 200 (Fla. 3rd DCA 1958). Although the appellees were not parties to the Agreement, Pacific's allegations must be interpreted in light of the transaction which gave rise to the instant litigation, i.e., the sale of the Property.
In the Summary the "Proposed Sale Price" was listed as $9.6 million. However, Pacific negotiated with Jaffe, the Seller's agent, and ultimately purchased the Property for $9.3 million. The purchase price, which was a few hundred thousand dollars less than the "Proposed Sale Price," suggests that some measure of bargaining between the purchaser and seller resulted in the lower price. Significantly, Pacific does not allege that the property was worth less than $9.3 million, or that it was wrongfully prevented from assessing the Property's fair market value and submitting a fair offer to purchase. See Port Largo Club, Inc. v. Warren, 476 So.2d 1330 (Fla. 3d DCA 1985). On the contrary, Pacific acknowledges that appellees showed it other golf courses for comparison purposes and the Agreement itself provided ample inspection and cancellation rights.
The Agreement also contradicts Pacific's argument that the purpose of the "inflated" price was to generate a secret profit for the defendants. The Agreement executed by Pacific unambiguously states that the Seller utilized the services of Marvin's agents and that he would be responsible for "consultation fees" due them.
In Pryor v. Oak Ridge Development Corp., 97 Fla. 1085, 119 So. 326 (1928), the seller allegedly made a false statement about the price and conspired with the buyer's agent to make a "secret profit." The court noted that:
a real estate broker cannot be held liable for representing to an intending purchaser that the owner would not accept less than the sum named by the broker for the premises, though the owner had in fact agreed with him to sell at a lower figure, in the absence of any confidential relation between the broker and intending purchaser or fraud to prevent inquiry or investigation by such purchaser.
119 So. at 328 (quoting Ripy v. Cronan, 131 Ky. 631, 115 S.W. 791 (1909)).
The court went on to define the meaning of materiality in a fraud claim:
The last element of a misrepresentation, in order that it may be the ground for any relief, affirmative or defensive, in equity or at law, is its materiality. The statement of facts of which it consists must not only be relied upon as an inducement to some action, but it must also be so material to the interests of the party thus relying and acting upon it, that he is pecuniarily prejudiced by its falsity, is placed in a worse position than he otherwise would have been.
119 So. at 329 (quoting Pomeroy Equity Jurisprudence, § 887).
Observing that the alleged falsity had been immaterial and had not caused the buyer to overpay or be damaged, the court commented:

*1057 Had the statement made been true, the fact would have added nothing to the value of the land. The complainants certainly could not be heard to say that, having inspected the land, they bought it at what appeared to them to be its value of $83,700, and that they would not have bought it at a lesser price. It appears only reasonable that they would have been more anxious to acquire the property at a price less the commission paid R.E.L. Pryor than they would have been to purchase the property paying the price including the commission. There is no allegation in the bill that the price at which the land was purchased was excessive ...
119 So. at 328-329.
We note that the Florida Supreme Court has recognized the seller's lawful right to ask whatever price he chooses regardless of his intention to take less:
In a real estate transaction a vendor has the right to sell at the best price he can obtain for his property, and a representation by him that he will not sell for less than a stated sum, knowing that he would take less rather than miss the sale, is not a representation of a material fact that will justify the rescission and cancellation of a contract.
Duvall v. Walton, 107 Fla. 60, 63, 144 So. 318, 319 (1932); Evans v. Gray, 215 So.2d 40, 41-42 (Fla. 3d DCA 1968), cert. denied, 222 So.2d 748 (Fla.1969).
Assuming, however, for the sake of argument, that appellees misrepresented the price, Pacific nonetheless fails to allege the element of inducement. Pacific's amended complaint does not set out any specific facts establishing how appellees induced it to purchase the Property at more that the "asking" price. To make a prima facie showing of fraud, "[t]hese matters must be alleged with sufficient particularity so that the trial judge in reviewing the ultimate facts alleged may rule as a matter of law whether or not the facts alleged are sufficient as the factual basis for the inferences the pleader seeks to draw and are sufficient to state a cause of action." Beckler v. Hoffman, 550 So.2d 68, 71 (Fla. 5th DCA 1989).
Pacific, a sophisticated developer in the business of investing millions of dollars in commercial property, was engaged in an arm's length transaction. Before entering into the Agreement, Pacific visited the Property and looked at other golf courses. Pursuant to the Agreement, Pacific had the right and a full and fair opportunity to inspect the Country Club Complex, its use and value, and its financial records and the right to terminate the Agreement after conducting said inspections. Moreover, the four-month delay between execution of the Agreement and the closing afforded sufficient time for Pacific to exercise these inspection rights. In light of these circumstances, Pacific could not, without specifically alleging more than the vague and conclusory statement that they were induced by the misrepresentation, withstand a motion to dismiss for failure to state a cause of action. See generally Wasser v. Sasoni, 652 So.2d 411 (Fla. 3d DCA 1995)(A sophisticated purchaser of commercial property, who agreed to an "as is" purchase contract, had ample opportunity to conduct inspections, and could have discovered an alleged defect through the exercise of ordinary diligence, may be disgruntled, but does not have a cause of action for fraud.).
Additionally, Pacific failed to allege sufficient facts to show that it justifiably relied on any representations made by the appellees to its detriment. Without justifiable reliance, there can be no actionable fraud. See Federal Deposit Ins. Corp. v. High Tech Med. Sys., Inc., 574 So.2d 1121 (Fla. 4th DCA 1991). FDIC involved an action brought by FDIC, as liquidator of a bank, against a debtor's accounting firm, asserting, among other things, fraudulent misrepresentation. The fraud claim arose from allegations that the accounting firm fraudulently induced the bank into closing on a loan based on the firm's oral promise to guarantee the debtor's receivables and inventory. The trial court found that there was no justifiable reliance, as a matter of law, because of the unambiguous disclaimer contained in a report and correspondence between the parties indicating that the accountants had not provided an independent certification or guarantee. In FDIC, we concluded that the trial court properly granted summary judgment as to *1058 the fraudulent misrepresentation count since there existed no genuine or material issue of fact regarding the absence of justifiable reliance on the part of FDIC.
Similarly, in this case, the express language of the Agreement and other exhibits attached to the amended complaint demonstrate that Pacific did not reasonably rely upon any material misrepresentations made by the appellees. Furthermore, as stated above, the Agreement provided inspection rights and ample opportunity for Pacific to visit the Property and audit the financial records. Pacific could have ascertained the value of the property, if they were dissatisfied with the quoted or negotiated price. They were under no obligation to purchase the Property and could have canceled the contract or revised its terms. Although Pacific asserts that they would not have purchased the property for $9.3 million had they known the Seller would have sold the property for $6.2 million, they have not alleged conduct tantamount to fraudulent representation by appellees.
Turning next to appellant's causes of action based on breach of fiduciary duty, we find that the amended complaint failed to show a fiduciary or agency relationship between Pacific and the appellees. The Agreement states that the Seller utilized the services of Marvin's agents and expressly disclaimed that any "person other than the parties ... [was] responsible for the making of the transaction." Furthermore, there are no allegations in the amended complaint that support the conclusion that the appellees acted as a fiduciary or "dual agent" or represented Pacific in any way. The only allegations purportedly connecting appellees to Pacific are (1) the preparation and delivery of the Summary, (2) the recommendations about the Property, (3) the tour of the Property and other golf courses in South Florida, and (4) statements about the "asking" price. This conduct does not amount to dual agency or give rise to a fiduciary duty. See Lerer v. Arvida Realty Co., 134 So.2d 798 (Fla. 2d DCA 1961)(prospective buyer not entitled to recover a deposit on theory of dual agency where real estate salesman not shown to have been subject to any orders or directions from the buyer/plaintiff nor to have been paid any fee by the buyer). See also Gryder v. Centrury 21/Oviedo Realty, Inc., 665 So.2d 1134 (Fla. 5th DCA 1996)(property vendor's broker found not to be dual agent for seller and buyer).
Here, Pacific has failed to allege that it reposed confidence in the appellees or that the appellees had or exercised superior control or influence over them. Appellees were not part of the negotiations between Pacific and the Seller. Pacific was represented in this transaction by independent legal counsel, and the purchase price was $300,000 less than the price stated on the Summary prepared by appellees. The Purchase and Sale Agreement made mention of the Seller's agents' participation and stated that the Seller would be solely responsible for their fees. In sum, Pacific has failed in its attempt to allege fraud in the inducement or breach of any recognized legal duty or allege any facts arising out of this arm's length transaction that would give rise to any cognizable cause of action against appellees.
For these reasons discussed above, the final order of dismissal with prejudice is affirmed.
AFFIRMED.
POLEN and GROSS, JJ., concur.
NOTES
[1] Hillcrest Pacific Corporation was subsequently formed by Pacific Atlas Development Corporation and took title to the property which is the subject of the instant suit. Both Hillcrest Pacific Corporation and Pacific Atlas Developments, the appellants, will be collectively referred to as "Pacific."