Patricia A. ADAMS, et al., Plaintiffs,

v.

KANSAS CITY LIFE INSURANCE COMPANY, Defendant.

No. 98–1053–CV–W–9–6.

United States District Court,
W.D. Missouri,
Western Division.

April 4, 2000.

Michawl E. Waldeck, Angela K. Green, Niewald, Waldeck & Brown, Kansas City, MO, Theodore J. Pintar, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Terry A. Smiljanich, James, Hoyer, Newcomer, Forizs & Smiljanich, P.A., Tampa, FL, for Plaintiffs.

David Field Oliver, David Marcus, Berkowitz, Feldmiller, Stanton, Brandt, Williams, & Stueve, LLP, Kansas City, MO, for defendant Kansas City Life Insurance Company.

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION

SACHS, Senior District Judge.

Plaintiff Patricia A. Adams brings this diversity action individually, and on behalf of all others alleged to be similarly situated, against defendant Kansas City Life Insurance Company (KCL). She asserts various common law tort and contract claims in connection with KCL's sale of a "vanishing premium" life insurance policy.

On February 7, 2000, I granted in part and denied in part defendant's Motion to Dismiss Plaintiff's First Amended Complaint. In my order, I dismissed plaintiff's fraud claim in Count I and her negligent misrepresentation claim in Count VII under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted.[1]

After a period of discovery plaintiff Adams moves for class certification on her remaining claims. Counsel have argued the motion.

### FACTS

In 1986, insurance agent Frank Landi sold Joseph and Patricia Adams a Maximum Growth Plan (MGP) universal life policy issued by KCL with "vanishing premiums" and a $175,000 death benefit. Because the Adams couple were concerned about their ability to pay premiums following Joseph Adams' retirement, Landi allegedly informed them that their policy would require annual premiums of $2,292 only until Joseph Adams reached 65, but with coverage continuing until age 95. Thus there would be a period of up to thirty years during which no premiums would be required.

This "vanishing premium" concept was memorialized in the Adams' policy application, which provided: "Specified Amount: $175,000. Planned Annual Premium: $2,292. Planned Payment Period: to 65. Planned Maturity Date: 95." Pl's Ex. 19.[2] The con-

---

1. This order included the claims of Kevin and Karolynne Palarmuchuck, who are also named as class representatives in plaintiffs' First Amended Complaint. However, the Palarmuchucks have not moved for class certification of their rather different claims.

2. A careful lawyer's reading of the form would suggest that the word "planned" is either surplusage or a word of warning and limitation. The form would plainly favor plaintiff's theory if the word were simply deleted.

cept was reinforced in sales materials such as "The Growth Plan Series Universal Life" brochure, which provided: "There's even a fast pay schedule that allows you to eliminate premium payments in later years—the 'vanishing premium' concept." *Id.* The Adams couple were also shown a computer-generated illustration which graphically depicted premium obligations disappearing when Joseph Adams turned 65.[3] Further, it is claimed that "Landi repeatedly represented and assured Mrs. Adams that no further out-of-pocket premiums would be required once her husband Joe reached age 65." Pl's Sugg., at 6 (citing Adams Depo., at 106–08); *see also* Adams Depo., at 85 ("I remember him telling me I could be assured at age 65 there would be no more premiums.").

Vanishing premium policies operate by applying the insured's initial premium payments toward the costs of insurance, commissions, and various fees, while investing subsequent funds to accumulate cash value and generate an investment return designed to "pay" for the policy from the date on which premium obligations are designed to cease until the policy's maturity date. Therefore, if the policy performs as planned, the insured receives an investment vehicle which ultimately provides "free" insurance during the policyholder's retirement years.

Vanishing premium policies are, however, complex devices whose performance depends upon numerous sensitive variables, including interest, mortality rates, sales, and actuarial rates. Due to a variety of factors, most notably apparently the general decline in KCL's interest income after 1986, the Adams' MGP policy did not accumulate sufficient cash value to cover the Adams' premium obligations past Joseph Adams' retirement. As a result, the policy's premium obligations did not vanish, and the Adams couple were informed in 1995 that they must pay annual premiums of $5,392.84 until Joseph Adams reached age 95 to maintain their policy. The reasons the policy did not per-

form as planned, or as promised, will be major issues in this lawsuit.

Plaintiff claims that KCL devised a fraudulent, sophisticated sales scheme to induce prospective policyholders to purchase vanishing premium plans that KCL knew would not perform as represented due to KCL's use of "teaser rates" and manipulation of the actuarial assumptions on which the policy's performance depended.[4] KCL maintains that it did not "guarantee" premiums would vanish but rather offered potential policyholders a "plan" which did not materialize because of changing interest rates and low investment returns.

Plaintiff Adams moves for certification of a class comprising

[a]ll persons who, based on objective documentation, purchased a Maximum Growth Plan policy from Kansas City Life Insurance Company in which the planned payment period for out-of-pocket premiums is less than the planned maturity date as set forth in the policy application and/or in a policy illustration.

Pl's Sugg., at 15.

## DISCUSSION

### A. Class Certification Requirements Under Rule 23.

To obtain class certification, plaintiff must satisfy the requirements of Rule 23, Federal Rules of Civil Procedure. While plaintiff's class certification motion must be subjected to "rigorous analysis," *see General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), this court has broad discretion in determining whether the prerequisites of Rule 23 have been satisfied. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

Rule 23(a) requires plaintiff to demonstrate that

---

3. The use of illustrations based on different levels of interest income tends to show an honest attempt to demonstrate uncertainty in the operation of the plan. Mrs. Adams allegedly expressed disinterest in the various levels of income, thus showing a need for further education which she allegedly did not receive.

4. For a more detailed summary of plaintiff's allegations, see Order Granting in Part and Denying in Part Defendant's Motion to Dismiss (Doc. 99).

1) the class is so numerous that joinder of all members is impracticable, 2) there are questions of law or fact common to the class, 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class. If the prerequisites of Rule 23(a) are met, plaintiff must also show the proposed class satisfies at least an alternative requirement of Rule 23(b). In this case, plaintiff contends the proposed class satisfies Rule 23(b)(3), which mandates that 1) common questions of law or fact predominate over issues affecting only individual members; and 2) class treatment of plaintiff's claims is superior to other available methods of fairly and efficiently adjudicating this case.

■ The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Predominance is satisfied "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D.Minn.1995). Common issues must predominate in proving the cause of action *as a whole* to render class certification appropriate. *See Cohn v. Massachusetts Mut. Life Ins. Co.*, 189 F.R.D. 209, 217–18 (D.Conn.1999) (citing *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir.1996)).

■ Because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (internal quotation omitted), this court may "probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364. The Supreme Court has recognized that the

issues relevant to class certification are "intimately involved" with the merits of the underlying claims and that " '[t]he more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.' " *Livesay*, 437 U.S. at 469 n. 12, 98 S.Ct. 2454 (quoting 15 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3911, at 485 n. 45 (1976)). Therefore, this court's certification decision is based on " 'a pragmatic assessment of the entire action.' " *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 221 (W.D.Mich.1998) (quoting 5 *Moore's Federal Practice*, 3d ed., § 23.46[1]).

■ After studying the briefing, deposition testimony, exhibits, and other filings submitted by the parties, I have concluded that this case should not proceed as a class action because plaintiff has not demonstrated that common questions of law or fact predominate over issues affecting only individual policyholders.[5]

### B. Plaintiff's Tort Claims

In my Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, I determined that Florida law governs plaintiff's claims for fraudulent inducement, breach of fiduciary duty, and negligent failure to train and supervise. Therefore, because the proposed class members' tort claims would be governed by the law of the state in which the policy was sold, this court would be required to synthesize the laws of many different states to adjudicate the merits of the alleged torts in this case.

■ "[T]he necessity of applying the substantive law of multiple jurisdictions would render class certification counterproductive," *Peoples v. American Fidelity Life Ins. Co.*, 176 F.R.D. 637, 642 (N.D.Fla.1998), because "variations in state law may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741. It has been said that "[i]f more than a few laws of the fifty states

5. Because I have determined that plaintiff's claims are too individualized and fact-specific to support certification, plaintiff cannot satisfy the predominance or superiority requirements of Rule 23(b)(3). Therefore, I need not address the four elements of Rule 23(a). For present purposes I assume they can be satisfied.

**278**

differ, the district judge would face the impossible task of instructing the jury on the relevant law." *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996). Therefore, to render certification of this proposed multi-state class action appropriate, plaintiff must "credibly demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.' " *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir.1986) (quoting *In re School Asbestos Litig.,* 789 F.2d 996, 1010 (3rd Cir.1986)).

■ In attempting to sustain her burden, plaintiff has submitted a series of tables showing that the elements of plaintiff's tort claims are similar in every state, *see* Pl's Exs. 36–37, and an example of jury instructions drafted to reflect variations between different states' laws. *See* Pl's Ex. 38. However, as KCL points out, plaintiff does not address numerous potentially divergent state law issues subsumed in the analyses of whether the various elements of plaintiff's tort claims can be satisfied or whether KCL can assert certain defenses to plaintiff's claims. *See* Def's Opp., at 44–45.[6] To the extent plaintiff acknowledges possible variations, plaintiff simply states that "they can be easily handled by grouping those variations." *See* Pl's Rep., at 32–33. However, "[g]iven [plaintiff's] burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano,* 84 F.3d at 742.

Therefore, plaintiff has not sufficiently demonstrated that state law variations are manageable so as to render her tort claims reasonably susceptible to class treatment. *See In re Jackson,* 183 F.R.D. at 223–24; *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. 332, 349 (D.N.J. 1997).

**1. Fraudulent Inducement**

■ Reliance is a core element of plaintiff's fraudulent inducement claim.[7] *See*

---

6. Apart from strictly legal variances the members of the class would have a variety of experiences with insurance sales persons. Use of a certain pattern of "objective documentation" to round up class members would have little tendency to confine the evidence of solicitation experiences of the class members.

*Hillcrest Pac. Corp. v. Yamamura,* 727 So.2d 1053, 1055 (Fla.Dist.Ct.App.1999). "Without justifiable reliance, there can be no actionable fraud." *Id.* at 1057.

As recognized by the court in *Cohn,* the Connecticut case, *supra,*

Justifiable reliance "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case." Accordingly, given the inevitable differences in the knowledge and financial sophistication of the members of the proposed class and the degree of care they exercised in reviewing the documentation presented to them in the course of their purchases, and given that the misrepresentations, if any, necessarily varied to some extent from transaction to transaction, determining whether there was justifiable reliance in any given case will require extensive individualized inquiry.

189 F.R.D. at 216 (quoting Restatement (Second) of Torts § 545A cmt. b (1976)). Therefore, reliance is often an individual issue that precludes class certification. *See id.; Parkhill v. Minnesota Mut. Life Ins. Co.,* 188 F.R.D. 332, 342–44 (D.Minn.1999); *In re Jackson,* 183 F.R.D. at 221–22; *Peoples,* 176 F.R.D. at 645; *see also* Fed.R.Civ.P. 32 advisory committee's note.

■ In response plaintiff argues that, because "KCL *uniformly* misrepresented and failed to disclose material information," reliance may be inferred on a class-wide basis without the necessity for individualized inquiries. *See* Pl's Sugg., at 28 (emphasis added). In support of her argument, plaintiff cites securities fraud cases where reliance is presumed and life insurance cases where the same alleged misrepresentations were uniformly communicated to all class members.

Contrary to plaintiff's allegations, the facts presented in this case show that KCL's agents did not receive uniform training, did not utilize a uniform sales script during their presentations, did not use uniform policy illustrations, and did not distribute uniform

---

7. Reliance is also essential to plaintiff's claim for unjust enrichment and imposition of a constructive trust, which requires a showing of fraud or other inequitable conduct. *See* Pl's Ex. 36; *see also In re Jackson,* 183 F.R.D. at 222.

marketing materials. *See* Landi Depo., at 40, 44–45, 211–12. Rather, an agent's sales presentation differed among class members depending on the particular concerns expressed by particular customers.

The planned payment period provision in plaintiff's policy application is the only alleged misrepresentation that might be characterized as "uniform" for class certification purposes. However, it defies logic and contradicts plaintiff's own allegations to assume that all class members sufficiently relied on this single word regarding a "plan" to the exclusion of all other representations, both written and oral, communicated during hundreds of individual meetings between agents and customers. This reality is confirmed by plaintiff's deposition testimony, which demonstrates that she relied substantially on Landi's oral representations:

Q: Where on this document do you see the word "vanish?"

A: Nowhere that I know of.

Q: But do you allege that the vanish—the word "vanish" is somehow part of your contract with Kansas City Life?

A: *He told me it was.* This is why we only had to pay premiums to 65. Adams Depo., at 110 (emphasis added).

A: *I remember him telling me I could be assured at age 65 there would be no more premiums.* *Id.* at 85 (emphasis added).[8]

I will not assume that unexplained application provisions were material or conclusive to each class member's decision to purchase a vanishing premium policy. To the contrary, common sense dictates that, before the parties would fill out an application, the customer must be convinced to purchase a particular policy. Therefore, any detrimental reliance would occur during the agent's sales presentation and would be based on varying oral and written representations made prior to consideration of the application.

Even assuming some few claimants did rely on the unexplained wording of the policy application, it would nonetheless be necessary to examine the circumstances surrounding the transaction and to determine whether it was justifiable for plaintiff to rely on a provision that explicitly states "planned," rather than "guaranteed." Why was the qualifying word there, except to weaken any commitment? The circumstances which will be used to determine whether each potential class member's reliance was justifiable, including the policy illustrations, sales materials, and oral representations, will vary significantly and cannot be analyzed on a classwide basis.

Because I anticipate that individualized, fact-specific issues will dominate plaintiff's fraud-related claims, these claims are not reasonably susceptible to class treatment.

### 2. *Breach of Fiduciary Duty*

■ The existence of a fiduciary duty is a question of fact which depends upon "the specific factual situation surrounding the transaction and the relationship of the parties." *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 518 (Fla.Dist.Ct.App.1994). Therefore, this claim also seems to present individualized inquiries which are not amenable to class adjudication.

■ Plaintiff contends, however, that her breach of fiduciary duty claim "is not based on the duty of the insurance agent to the insured" but is "based on KCL's fiduciary duty." Pl's Rep., at 26. According to plaintiff, "[t]here is no reason this duty cannot be determined on a classwide basis from evidence common to the plaintiff class." *Id.*

Plaintiff's arguments are without merit for several reasons. First, plaintiff's assertion that her claim is not based on the duty of an insurance agent contradicts the allegations in her Amended Complaint, which charges that "Kansas City Life, *by and through its agents,* created a fiduciary relationship between itself and plaintiffs and class members." Am. Comp. ¶ 107 (emphasis added); *see also* ¶¶ 108–09, 110 ("Plaintiffs and class members

---

8. Although plaintiff seeks to certify a class based on "objective documentation" and is emphasizing written materials presumably in a strategic attempt to obtain certification by downplaying the individualized issues inherent in oral representations, I cannot disregard plaintiff's allegations of material oral misrepresentations contained in both her Amended Complaint and in her deposition testimony. Presumably the person-to-person exchanges will dramatize (and individualize) the tort claims. I shall not assume plaintiff's able and energetic counsel will rest their case on a cold record when more colorful proof is available.

**280**

had a right to rely upon Kansas City Life *agents* to disclose to them, and not conceal from them, pertinent and material facts....") (emphasis added). Second, assuming the validity of plaintiff's distinction between KCL's duty and the duty of agents working on its behalf, plaintiff has not explained why this distinction is significant. For instance, there is no evidence that KCL had any direct contact with plaintiff or other proposed class members which might create fiduciary responsibilities. Rather, any relationship of trust and confidence was apparently created through agents who directly communicated with potential customers while marketing KCL policies. Third, plaintiff fails to identify any "common evidence" purporting to show KCL breached its fiduciary duty on a class-wide basis. Therefore, individual questions predominate in evaluating plaintiff's breach of fiduciary duty claim.

### C. *Plaintiff's Contract Claims*

Plaintiff contends that KCL breached its agreement to provide coverage consistent with the provisions of plaintiff's policy application. To repeat, the application, which is part of the parties' contract, provides: "Specified Amount: $175,000. Planned Annual Premium: $2,292. Planned Payment Period: to 65. Planned Maturity Date: 95." Pl's Ex. 19.

Plaintiff would construe the language of these provisions as a promise or guarantee that her obligations would not exceed those proposed in the application. Alternatively, if the language is ambiguous, plaintiff argues that this court must apply the doctrine of *contra proferentem* and strictly construe the language against KCL. Because KCL's application forms were uniform, plaintiff argues these issues can be resolved on a class-wide basis. As I have previously observed, the contract claim thus presents the plaintiff's strongest argument for class certification.

KCL responds that "Plaintiff Adams unreasonably construes the term 'planned' to mean 'fixed' or 'guaranteed.' The plain meaning of 'planned' is not 'fixed' or 'guaranteed,' it is 'intended.' " Def's Post–Hearing Sugg., at 3–4. If the provisions are deemed ambiguous, KCL contends that this court must resort to extrinsic evidence, including the varied oral representations and explanations of KCL agents, to ascertain the parties' intent.

This is not the occasion to make a final ruling as to the merits. In order to place in focus, as much as possible, the anticipated trial setting of the litigation, it is appropriate, however, as in preliminary injunction practice, to determine likely legal rulings on some significant issues.

As previously noted, a sharp-eyed lawyer's reading of the application form would probably indicate that the word "planned" is a word of limitation rather than some form of absolute promise. An absolute promise would be sought in the application form if it would simply refer to the premium as $2,292 and the payment period as being "to 65." It could also be argued by KCL that the word about a plan was obviously one which contemplated uncertainty as to results. The Scottish poet was using commonly understood language and experience when he wrote that plans (or "schemes") go often awry. *In re Young*, 66 F.3d 376, 377 (1st Cir.1995). The Marshall Plan was based on reasonable hopes rather than certainty. If the application language in question were in a statute or in a treaty it would quite probably be construed as KCL would have it construed.

Two reasons probably preclude a ruling that the application form unambiguously favors KCL's theory that it had a clear right to adjust premiums and the payment period as conditions changed. In contesting class certification KCL argued that the words in question present ambiguities that authorize a variety of individualized solicitation testimony. This admission cannot be casually disregarded. In addition, the language in question necessarily reaches many people with low levels of sophistication in reading form language, and probably little incentive to go beyond what a salesman may say. It is likely, therefore, that I would not rule for KCL as a matter of law on the claimed absence of an absolute guarantee in the application form.[9]

Once I have indicated that I shall probably rule that the language on which plaintiff re-

---

**9.** I further note that KCL seemingly missed the opportunity to use policy language to point out

lies contains some degree of ambiguity plaintiff would have me adopt a conclusion that not only should a class be certified, but that she is likely to prevail as a matter of law, without a trial establishing the circumstances of the 1986 sale of a policy. This is improbable.

In *State ex rel. Northwestern Mut. Life Ins. Co. v. Bland,* 354 Mo. 391, 189 S.W.2d 542 (1945), the Missouri Supreme Court implicitly held that the rule of construction favoring insureds when there is ambiguity in an insurance contract is overridden when the ambiguity can be resolved through extrinsic evidence of the parties' intent. *Id.* at 549 ("[W]here an ambiguity in an insurance policy [can be] removed by the construction of the parties there is no room for the application of the rule [that] a policy must be strictly construed against the insurer."). The court in *Bland* looked to extrinsic evidence *before* invoking the rule known as *contra proferentem.*

 Although the point has not been previously noted, to my knowledge, the *Bland* case seems to place Missouri insurance cases under the general rule of construction favoring contracting parties who did not choose the words "only when other means of construction fail or are unavailable" for resolving the intent of the parties. *Silver Dollar City, Inc. v. Kitsmiller Constr. Co.,* 931 S.W.2d 909, 914 (Mo.Ct.App.1996). This procedural

approach is often used in the context of insurance law. *See United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 495 (4th Cir.1998); *United States v. Insurance Co. of N. Am.,* 131 F.3d 1037, 1043 n. 11 (D.C.Cir.1997) (quoting Restatement (Second) of Contracts § 206 cmt. a (1979)); *Hughes v. Boston Mut. Life Ins. Co.,* 26 F.3d 264, 270 n. 6 (1st Cir.1994); *Morgan Stanley Group, Inc. v. New England Ins. Co.,* 36 F.Supp.2d 605, 609 (S.D.N.Y.1999); *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.,* 117 Md.App. 72, 699 A.2d 482, 494 n. 10 (Ct.Spec.1997); *Motor Coils Mfg. Co. v. American Ins. Co.,* 308 Pa.Super. 568, 454 A.2d 1044, 1049 (1982); *Public Utility Dist. No. 1 v. International Ins. Co.,* 124 Wash.2d 789, 881 P.2d 1020, 1026 (1994).[10] As a general rule, before applying *contra proferentem,* "recourse must be had to evidence of the relationship of the parties, the circumstances surrounding execution of the contract, subject matter of the contract, acts of the parties in relation to the contract, and any other external circumstances which would cast light on the intent of the parties." *Baker v. Whitaker,* 887 S.W.2d 664, 670 (Mo.Ct.App.1994).

 I cannot conclude that Missouri law authorizes recovery by insureds automatically when there is ambiguity in the policy and application forms, regardless of the circumstances. *Bland* rejects that concept, and later Missouri cases do not discuss the issue in the context of insurance law.[11] Therefore,

that premiums and premium periods are subject to change adverse to the policy-holder. This omission was a lapse in clarity and/or candor—making the role of the sales agent that much more critical.

10. The Eighth Circuit has ruled that this is favored insurance law practice in ERISA cases as "a matter of federal common law." *Delk v. Durham Life Ins. Co.,* 959 F.2d 104, 106 (1992). This seems likely to be persuasive if, despite *Bland,* Missouri is treated as an uncommitted state on this issue of insurance law practice.

11. The parties have not provided a survey of Missouri law that would be adequate to determine definitively whether *Bland* would represent current Missouri practice if there is both ambiguity in the insurance policy and an offer of evidence showing construction by the parties that would resolve the ambiguity in a manner favorable to the insurer. A 1943 decision by the Circuit which seems consistent with *Bland* is *Sulzbacher v. Travelers Ins. Co.,* 137 F.2d 386

(8th Cir.), where the Circuit stated at page 391 that "if ambiguity may possibly be found in the policy ... the parties by their conduct had construed the policy against the contentions now advanced" by the beneficiary of a life insurance policy. Another fifty year old case decided by the Circuit cites and follows *Bland* in suggesting that, assuming ambiguity in the contract, extrinsic evidence of practical construction by the parties can be given "controlling importance." *Hawkeye Casualty Co. v. Rose,* 181 F.2d 157, 159 (8th Cir.1950). An early opinion by Judge Heaney which also seems consistent with *Bland* is *Bankers Life & Cas. Co. v. Leary,* 387 F.2d 564 (8th Cir.1967), where it is said (page 568) that where "there is ambiguity in [the insurance] contract, then the practical construction placed upon it by the parties is of controlling importance." Assuming this to be the law of Missouri, no principled distinction can be suggested between the use of one type of extrinsic evidence and another in seeking a fair and sound construction of the policy, before resorting to the

because the provisions at issue may not prove to be irretrievably ambiguous, and because plaintiff's construction is not fundamentally compelling, it is my view that plaintiff's claim and those of the proposed class members could probably only be resolved by considering varying types of extrinsic evidence. By allowing extrinsic evidence of the parties' dealings, the breach of contract claims become individualized and not reasonably susceptible to class action treatment.[12]

## CONCLUSION

Therefore, when considered in its entirety, this case is simply not manageable as a class action because plaintiff's claims are likely to be dominated by individualized, fact-specific issues.

Accordingly, it is ORDERED that:

1) plaintiff's Amended Motion for Class Certification (Doc. 89) is denied; and

2) within 30 days from the date of this order, nonresident counsel for plaintiffs shall state in writing whether they intend to pursue plaintiffs' claims on an individual basis.[13]

---

familiar rule favoring insureds in the event the construction of policy language remains unclear.

12. I will not address plaintiffs' claims for negligent failure to train and supervise and breach of the duty of good faith and fair dealing because

the parties devoted little attention to these claims in their briefing.

13. It is my understanding that local counsel's commitment to the litigation is not contingent on class action status.