Donna J. BOWERS, individually and in a representative capacity, Plaintiff,

v.

JEFFERSON PILOT FINANCIAL IN-SURANCE COMPANY, a Nebraska corporation and corporate successor to Alexander Hamilton Life Insurance Company of America, a Michigan corporation, Defendant.

No. 01–71724.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 29, 2004.

Eugene Driker, Dennis M. Barnes, Barris, Sott, Detroit, MI, Waldemar J. Pflepsen, Jr., James F. Jorden, Paul A. Fischer, Jorden, Burt, Washington, DC, for defendants.

Stephen Wasinger, Gregory D. Hanley, Timothy O. McMahon, Wasinger, Kickham, Royal Oak, MI, for plaintiff.

## *OPINION*

DUGGAN, District Judge.

On January 7, 2003, this Court granted Plaintiff's motion for class certification on the only remaining claim in this case: a breach of contract claim based on Plaintiff's belief that Defendant miscalculated the equity value under the terms of a life insurance policy. In that opinion this Court directed the parties to submit an order for entry consistent with the opinion. The parties failed to do so. On January 16, 2003, Defendant filed a Motion to Defer Entry of Class Certification Order. Among other things, Defendant argued that the Court's opinion granting class certification failed to make the necessary choice of law determination and that substantial differences among the states' laws with respect to contract interpretation would render this proposed nationwide class action unmanageable. A hearing was held on the motion to defer class certification on June 27, 2003.

### Background

In the January 2003 opinion, this Court concluded that the prerequisites to a class

action set forth in Fed. R. Civ. P. 23(a) are satisfied with respect to the miscalculation of equity claim. The only remaining issue to be resolved is Defendant's argument that the variations in state laws render this action unmanageable as a class action.[1] Plaintiff believes that any choice of law difficulties are either speculative at this point in the litigation, or can be managed through the use of subclasses.

Briefing on the class certification issue has been extensive.[2] At issue in this case is the interpretation of a portion of a life insurance policy. The policy language at issue reads:

**Net Premium:**

In Policy years one through ten, the Net Premium is equal to:

1. 94% of premiums received up to the Expense Premium shown on the Policy's Schedule Page, plus

2. 98% of any premiums received in excess of the Expense Premium.

In all Policy Years after the Tenth Year, the Net Premium is Equal to 98% of all premium received.

Plaintiff believes that under this policy language, satisfaction of the Expense Premium is determined on a cumulative basis. If at any time during the first 10 years the premiums paid equal the Expense Premium, then the policy holder is entitled to a Net Premium of 98% of the premium paid every year thereafter. Defendant, however, believes that the satisfaction of the Expense Premium is determined annually. According to Defendant, during the first 10 years, the insured is entitled to the 98% rate only in the years in which the premium paid *in that year* satisfies the Expense Premium. Because Defendant used the annual approach, and not the cumulative approach, Plaintiff believes the death benefit she ultimately received was lower than what she was entitled to under the policy.

## Discussion

Although the pending motion filed on January 16, 2003, by Defendant is entitled a Motion to Defer Class Certification, all of the briefs filed in support of and in opposition to this motion in actuality address the issue of whether or not the Court's order of January 7, 2003, granting class certification was in error. In Defendant's supplemental brief filed on July 28, 2003, Defendant "requests that this Court decline to enter an Order certifying a nationwide class of Hamilton life insurance policyholders." (Def's Br. at 20).

In Plaintiff's brief in opposition to the motion to defer class certification filed February 3, 2003, Plaintiff acknowledges that in reality, Defendant's motion is a motion for reconsideration: "Hamilton's arguments ... represent a thinly-veiled motion for reconsideration which merely regurgitates Hamilton's prior arguments." (Pl.'s Br. at 10). Accordingly, the Court construes Defendant's motion to defer class certification as a motion for reconsideration.

Motions for reconsideration are governed by E.D. Mich. LR 7.1(g) which provides: "The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." Having reviewed the briefs in support of and in opposition to Defendant's Motion to Defer Class Certification, this Court is satisfied that its opinion of January 7, 2003, contains a palpable defect and that "correcting the defect will result in a different disposition of the case." Specifically, this Court having re-examined the applicable law, is satisfied that the difficulties likely to be encountered in the management of this case are such that this action should not be certified as a class action. *See* Fed. R. Civ. P. 23(b)(3)(D).

At the hearing on June 27, Defense counsel argued that variations in state law with

---

1. Under Federal Rule of Civil Procedure 23(b)(3), common questions of law or fact must predominate and the class action mechanism must be superior. One factor relevant to the predominance and superiority inquiry are "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D).

2. As of October 2, 2003, the parties collectively have filed thirteen briefs addressing class certification.

respect to extrinsic evidence will make this class action unmanageable.[3] Defense counsel acknowledged that the question of whether a contract is ambiguous is a question of law, but argued that there are some states that permit the introduction of extrinsic evidence to show the parties' intent, even if the contract language is unambiguous. Defense counsel argued that the extrinsic evidence will vary among policy holders, rendering the case unmanageable.[4]

Plaintiff, on the other hand believes that this case is ideal for class certification because it is based on a breach of a standardized form policy. Plaintiff argues that when a standardized contract is at issue, the contract is to be interpreted uniformly. While there may be admissible extrinsic evidence common to the class, Plaintiff believes that extrinsic evidence such as oral communications between the agent and policyholder, and policyholders' understanding of the provision at issue (*see* footnote 4 *supra*) would be inadmissible.

Defendant relies heavily on *Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274 (W.D.Mo.2000), arguing that that case is "almost on all fours with this." (Hr'g Tr. at 21, 6/27/03). The Court agrees. In *Adams*, plaintiff sought class certification based on a breach of contract claim involving a "vanishing premium" life insurance policy. Plaintiff's breach of contract claim was based on the policy language itself,[5] as well as written sales materials and oral representations by the insurance agent that the obligation to pay premiums would disappear when the insured reached age 65. Due to a variety of reasons,

the obligation to pay the premiums did not disappear and plaintiff filed suit alleging breach of contract, among other claims.

In *Adams*, the court considered both parties' interpretation of the disputed policy language and concluded that it would probably find the policy language to be ambiguous. The court stated that the vanishing premium breach of contract claim "could probably only be resolved by considering varying types of extrinsic evidence. By allowing extrinsic evidence of the parties' dealings, the breach of contract claims become individualized and not reasonably susceptible to class action treatment." *Id.* at 282. Plaintiff makes no attempt to distinguish *Adams*.

It is true, as Plaintiff points out that other courts have found class certification to be appropriate where the plaintiff alleges a breach of a standardized contract. However, the cases relied on by Plaintiff are distinguishable either because they do not involve choice of law considerations (*see, e.g., Johnson v. Aronson Furniture Co.*, 1998 WL 641342 (N.D.Ill.1998)), or because they do not involve competing interpretations of specific contract language (*see, e.g., Mortimore v. F.D.I.C.*, 197 F.R.D. 432 (W.D.Wash.2000); *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 122 F.R.D. 177 (E.D.Pa.1988); *Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago*, 121 F.R.D. 664 (N.D.Ill.1988); *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D.Kan.1995)).

■ Plaintiff bears the burden of proof to establish that class certification is appropriate. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996). "If more

---

**3.** Specifically, Defendant argues that the issues to be resolved include whether extrinsic evidence is admissible, when it is admissible, what type of evidence is admissible and whether the evidence goes to the court or jury. (Def.'s Supp. Br. at 2, 7/28/03).

**4.** At the hearing in June, the Court requested that Defendant submit to the Court examples of extrinsic evidence to be offered. The examples include: prior dealings (including an individual's ownership of other policies with similar provisions), oral and written communications between agent and policyholder, agents' understanding of Equity Value provision, and subsequent course of conduct (including pattern of premium payments by policyholders, and reactions of policyholders

to annual statements). (*See* Def.'s Supp. Br. at 14–16, 7/28/03).

**5.** In *Adams*, the insurance policy language at issue read:

> Specified Amount: $175,000.
> Planned Annual Premium: $2,292.
> Planned Payment Period: to 65.
> Planned Maturity Date: 95.

*Adams*, 192 F.R.D. at 275. Plaintiff construed this language as a promise that the obligation to pay premiums would end at age 65. Defendant argued that used of the word "planned" does not suggest a promise or guarantee, rather "planned" in this context means "intended." (*Id.* at 280).

than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action." *In re American Med. Sys.*, 75 F.3d at 1085. Therefore, to establish that certification is appropriate, Plaintiff must "credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insurmountable obstacles." *Adams*, 192 F.R.D. at 278 (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C.Cir.1986)).

In this case, Defendant opposes class certification arguing that variations among states' laws with respect to the use of extrinsic evidence in interpreting contract language render this case unmanageable. Therefore, it is Plaintiff's burden to establish the absence of variations in states' laws, i.e., manageability, as it relates to this issue. Plaintiff has failed to do so.

In Plaintiff's Supplemental Brief Regarding Class Certification, Plaintiff states: "Plaintiffs, however, have performed their own survey of the parol evidence rules of the 14 states in which approximately 73% of the class members collectively reside. Plaintiff's survey, which is attached hereto as Exhibit A, confirms that there are no material differences in the parol evidence rules of the relevant states." (Pl.'s Supp. Br. at 10–11, 9/4/03). In this Court's view, Exhibit A does not establish an absence of material differences. Although Plaintiff believes that there are no material differences among these states, it is clear that among these 14 states, some allow courts to consider extrinsic evidence to determine if there is an ambiguity (California, Illinois, Michigan, and Pennsylvania) and some do not. *See, e.g., Emergency Assoc. of Tampa, P.A. v. Sassano*, 664 So.2d 1000, 1002 (Fla.Dist.Ct.App.1995)("It is a fundamental tenet of contract law that a phrase in a contract is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one. In the event of such an ambiguity, a trial court is author-

ized to admit parol evidence to explain the words used and how the contracting parties intended them to be interpreted. However, before a trial court can consider such extrinsic evidence in interpreting a contract, the words used must be unclear such that an ambiguity exists on the face of the contract.")(internal citations omitted); *Schwieger v. Harry W. Robbins & Co.*, 48 Wash.2d 22, 290 P.2d 984 (1955)("We often have said that the courts will not interpret the meaning of unambiguous contracts. Neither will courts permit oral evidence to establish or create an ambiguity in a written contract.")(internal citation omitted); *New Concept Constr. Co., Inc. v. Kirbyville Consol. Indep. Sch. Dist.*, 119 S.W.3d 468, 469 (Tex. Ct.App.2003)("We ascertain and give effect to the parties' intentions as expressed in the document itself. . . . If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. Only when the court finds the contract ambiguous may the court consider parol evidence of the parties' intentions. When a contract is not ambiguous, the contract should be enforced as written.")(internal citations omitted).[6]

Plaintiff also argues that standardized contracts "are not subject to interpretation by review of the subjective understanding of the parties." (Pl.'s Supp. Br. at 14, 9/4/03). In support of this argument, Plaintiff relies on Restatement (Second) of Contracts § 211(2), which provides in relevant part that with respect to standardized agreements, "[s]uch a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the terms of the standard terms of the writing." Plaintiff has provided the Court with a list of cases citing § 211. This list does not support Plaintiff's position that courts uniformly would reject extrinsic evidence of the type to be offered by Defendant, i.e., oral representations between agents and insured, because many of those cases listed cite to § 211(3), not

---

6. Further, Plaintiff does not address Defendant's argument that there are also variations among states with respect to the type of extrinsic evidence that can be offered. (*See* Def.'s Resp. at 2, fn. 2, 09/23/03).

§ 211(2).[7] In addition, even in those states that adhere to § 211(2), the Court cannot conclude that if the disputed policy language is ambiguous, those states would bar Defendant from introducing evidence that the agents made oral communications to policyholders consistent with its interpretation of the Net Premium language at issue.[8]

■■■ Finally, the Court rejects Plaintiff's argument that Michigan law may be applied to the claims of all class members. Other courts have declined to apply the forum's law at the expense of choice of law considerations. In *In re Jackson National Life Insurance Co. Premium Litigation,* 183 F.R.D. 217, 223 (W.D.Mich.1998), the court stated:

> Rather than contest Jackson National's state law variations argument, plaintiffs attempt to sidestep it. They ask the Court simply to apply Michigan law, the law of the forum state, uniformly to all claims. Plaintiffs have failed to persuade the Court to reconsider its choice-of-law ruling in which the interests of plaintiffs' states of residence were held to outweigh the interests of the State of Michigan. Indeed, the choice-of-law analysis is a matter of due process and is not to be altered in a nationwide class action simply because it may otherwise result in procedural and management difficulties.

Federal courts sitting in diversity apply the choice of law rules of the state where they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Plaintiff acknowledges that Michigan court's utilize the Restatement (Second) of Conflict of Laws' "most signifi-

cant relationship" standard. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 448 Mich. 113, 125, 528 N.W.2d 698, 703 (1995)("It is sufficient to say that the concerns for certainty and public policy expressed in the Second Restatement reflect sound considerations that may guide a court in resolving specific conflicts between contract laws of different states.").[9]

Plaintiff argues that Michigan has the most significant relationship to the transactions at issue. However, Plaintiff fails to acknowledge that in the context of life insurance policies, the Restatement has a built in presumption that the state with the most significant relationship is the state where the insured is domiciled. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 192 ("The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state *where the insured was domiciled at the time the policy was applied for,* unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.")(emphasis added).

The fact that numerous states have enacted statutes dictating that life insurance policies are to be governed under the laws of that state clearly suggests that with respect to the enforcement of life insurance policies, Michigan's interest does not outweigh that of

---

7. § 211(3) reads: "Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement."

8. Even if all states routinely adhered to § 211, the Court is not convinced that RESTATEMENT (SECOND) OF CONTRACTS § 211 would even apply to the case at bar. Section 211, entitled "Standardized Agreements" reads:

    (1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that *like writings are regularly used to embody terms of agreements of the same type,* he adopts the writing as an integrated agreement

with respect to the terms included in the writing.
(emphasis added). Plaintiff has not demonstrated that the contractual language at issue is regularly utilized in life insurance policies. To the contrary, Defendant points out that this language was not uniformly used in its policies. (*See* Def.'s Mem. in Opp'n at 3, fn. 5).

9. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2), the factors to be considered in determining which state has the most significant relationship to an issue involving a contract include: the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the parties' domicile.

other states.' [10] *See also Equitable Life Assur. Soc. v. Poe*, 143 F.3d 1013, 1016 (6th Cir.1998)(finding that in the context of disability insurance policy, Michigan choice of law rules "require a court to balance the expectations of the parties to the contract with the interests of the states involved to determine which state's law to apply.")

## Conclusion

■ For the reasons set forth above, the Court concludes that:

(1) The laws of the states where the policyholder was domiciled at the time the policy was applied for must be applied to the claims of each policyholder.

(2) There appears to be a significant variation in the laws of the states with respect to the use of extrinsic evidence (including the types of extrinsic evidence that may be used) to determine whether, as a matter of law, the contract language is ambiguous. *Compare Sawyer v. Arum*, 690 F.2d 590, 593 (6th Cir.1982)( "... extrinsic or parole evidence may be admitted in Michigan to establish both the existence of, and to ultimately resolve, a contract ambiguity ...."), *with Stewart v. KHD Deutz of America, Corp.*, 980 F.2d 698, 702 (11th Cir.1993)("Under the decisions of this court and the laws of Georgia, extrinsic evidence is not admissible to contradict the terms of an unambiguous con-

tract. Moreover, it is not even admissible to establish ambiguity; any ambiguities must be created by the language of the contract itself.")(internal citations omitted).

(3) There appears to be a significant variation in the laws of the states with respect to the use of extrinsic evidence to determine the intent of the parties even where the court determines that the language is *not* ambiguous. Defendant contends that Arizona, California, and Pennsylvania allow the court (and possibly the jury) to consider extrinsic evidence even where the court does not find the contract language to be ambiguous, citing *Smith v. Melson, Inc.*, 135 Ariz. 119, 659 P.2d 1264 (1983), *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 854 P.2d 1134 (1993); *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968); *Z & L Lumber Co. v. Taylor*, 348 Pa.Super. 580, 502 A.2d 697 (1985).[11] *But see Shifrin v. Forest City Enters., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501 (Ohio 1992)("Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions.")

(4) With respect to the use of extrinsic evidence, not only does the Court have to

---

**10.** *See e.g.*, Ala. Code § 27–14–22 ("All contracts of insurance, the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof."); Miss. Code Ann. § 83–5–7 ("All contracts of insurance on property, lives, or interests in this state shall be deemed to be made therein."); Tex. Ins. Code Ann. art. 21.42 ("Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance..."). *See also* Restatement (Second) of Conflict of Laws § 192 cmt. c ("There are several reasons why such importance is attributed to the state where the insured was domiciled at the time the policy was applied for. Life insurance is a matter of intense public concern, as is evidenced by the fact that it has been subjected to extensive statutory regulation by the great majority of states. Issues arising under a life insurance policy should be determined by the local law of the state which has the dominant interest in the insured with respect to these is-

sues, and this state will usually be that where the insured was domiciled at the time the policy was applied for.")

**11.** In addition to the difficulties in determining the appropriate law to be applied with respect to the use of extrinsic evidence, the use of extrinsic evidence itself poses potential individualized considerations.

Defendant contends that the extrinsic evidence that may be used (depending on the state law) includes oral communications between the insured and the insurance agent at the time of sale. If, for example, this Court were to find that the policy unambiguously supports Defendant's position, nevertheless, in those states that permit extrinsic evidence to be used to show the intent of the parties, the Court, despite having concluded that the policy unambiguously appears to support Defendant's position could, based on the extrinsic evidence presented, *e.g.*, oral or written communications between the insured and the insurance agent, conclude that those policyholders should prevail.

deal with the variations in state law regarding its use, *i.e.*, when extrinsic evidence may be admitted and the type of extrinsic evidence that may be used, but as a preliminary step, the Court must determine in each instance, exactly what the law is in each state with respect to the use of extrinsic evidence. While the Court's brief review of state law suggests variations as set forth above, the Court believes that an in-depth review of each state's laws (particularly for those states where the parties disagree as to what the law is) would be required before the Court could determine how to correctly use the extrinsic evidence. This alone contributes to the management difficulties of this case.

In sum, the Court is satisfied that because of the significant variations in the states' laws with respect to the use of extrinsic evidence, class certification is not warranted. Therefore, upon reconsideration, the Court concludes that because of the difficulties likely to be encountered in the management of this case, this action should not be certified as a class action. *See* FED. R. CIV. P. 23(b)(3)(D).

Therefore, the Court shall vacate its order of January 7, 2003, granting Plaintiff's motion for class certification and upon reconsideration, the Court shall deny Plaintiff's motion for class certification.

An order consistent with this opinion shall issue.

### *ORDER*

Currently before the Court is Defendant's Motion to Defer Entry of Class Certification which, for the reasons set forth in an opinion issued this date, the Court construes as a motion for reconsideration. For the reasons set forth in an opinion issued this date,

**IT IS ORDERED** that Defendant's Motion to Defer Entry of Class Certification is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court's order of January 7, 2003, granting Plaintiff's motion for class certification is **VA-**CATED and upon reconsideration, Plaintiff's motion for class certification is **DENIED**.