CONTINENTAL CASUALTY CO. v. CITY OF OCALA.

149 So. 381.

Division B.

Opinion Filed June 28, 1933.

*Sutton, Tillman & Reeves* and *Robert H. Anderson,* for. Appellant;

*Hampton & Greene,* for Appellee.

BROWN, J.—This case has been here before on an appeal from an order overruling a demurrer to the bill of complaint, and such order was reversed. See 127 So. 894, 99 Fla. 851. After the case was remanded to the circuit court, the complainant, appellee here, amended its bill. A demurrer was interposed to the amended bill and the circuit judge, being of the opinion that the bill as amended met the requirements of the previous opinion of this Court, overruled the demurrer and the defendant took this appeal. The facts alleged in the original bill are quite fully and accurately summarized in the opinion written by Mr. Justice Buford on the former appeal, which opinion was concurred

in by all of the Justices. It is now only necessary to direct attention to those allegations of the amended bill, material to the questions to be considered, which differ from, or add to the allegations of the original bill.

The principles of law governing the reformation of written contracts have already been in large part settled by the previous decisions of this Court, cited by and in part quoted from in the opinion on the former appeal. See Rosenthal v. First National Fire Insurance Company, 74 Fla. 371, 77 So. 92; Phenix Insurance Company v. Hilliard, 59 Fla. 592, 52 So. 799, and Fidelity Phenix Fire Insurance Company v. Hilliard, 65 Fla. 443, 62 So. 585.

In the last cited case it was held that "in reforming a policy insurance, like that of any other written contract, the want of conformity to the agreement of the parties must be occasioned by a mistake which is mutual and common to both parties to the instrument;" that a mistake on one side may be a ground for rescinding, but not for reforming the contract; that where the minds of the parties have not met, there is no contract, and hence none to be rectified. In our opinion on the former appeal in this case it was said:

"The bill of complaint fails to show that there was ever any agreement upon the part of the surety to execute a bond containing the provisions which appear in the blank bond attached to the specifications, and the bond which was executed by the surety company shows upon its face that it was not the purpose or intention of the surety company to execute a bond guaranteeing that the contractor would pay all claims for labor and material, and that it was not the purpose or intention of the surety company to execute a bond which would create a liability against the surety company in favor of any party except the obligee named in the bond, to-wit, the City of Ocala."

In the endeavor to meet the insufficiencies in the original bill of complaint, as above pointed out, the amended bill now before us alleges that it was at all times the intention and purpose of the city to require and obtain from the contractor, Baker & Foulks, Inc., a bond containing the provisions specified in the statute and upon or in substantially the form of bond "specified and set forth in said proposed contract, including the instructions to bidders, form of bond and specifications, namely: The form of bond attached thereto and forming a part thereof, a copy of which is included in the contract attached hereto as Exhibit A; and that it was also the intention and purpose of Baker & Foulks, Inc., to furnish and supply such bond."

Exhibit A shows that the "instructions to bidders" contained a paragraph reading: "The successful bidder will be required to give bond acceptable to the city in the full amount of the contract with a Surety Company authorized to do business in Florida, and having an agent resident in Marion County, Florida, as surety, said bond to be countersigned by such resident agent." The proposed form of bond thereto attached was set forth in our opinion on the former appeal. In its acceptance of the proposal for bids, the contractor, Baker & Foulks, Inc., obligated itself to enter into a contract and furnish acceptable bond, as specified. However, the *form* of bond attached to the instructions to bidders does not appear to have been made a part of the *contract* entered into between the City and Baker & Foulks, Inc. The instructions to bidders provided that "the following papers shall constitute the contract: (a) The published notice to Contractors. (b) Memorandum of the agreement. (c) The proposal or bid. (d) The duly executed bond. (e) Specifications, hereto attached. (f) Plans and profiles prepared by the engineer." Indeed it appears that it was the "duly executed bond" and not the form of bond, which was

made a part of the contract. In other words, the bond never became a part of the contract until it was duly executed, and the bond which was executed in this case was entirely different from the *form* above referred to. Thus the allegation in the amended bill that the *form* of bond became a part of the contract is neutralized by the Exhibit referred to and attached to the bill. The contract proper between the City and Baker & Foulks, Inc., which was made a part of the same Exhibit (pp. 19-21 of transcript), makes no reference to the bond except that the contractor undertook to do the work and furnish the materials "under penalty of the bond attached hereto, and bearing date of November 1, 1926." It does not appear from this record that any bond bearing date of November 1, 1926, was attached to the contract. The only bond appearing in the record (pp. 47-50 of transcript) is a bond dated January 5th, 1927, in the sum of $64,000, only one-half the amount of the contract, and this is the bond which it is sought to have reformed.

In the case of City of Ocala v. Continental Casualty Company, 127 So. 326, 99 Fla. 736, in which this Court reviewed a judgment adverse to the City in an action brought by the city, for the use and benefit of the Standard Oil Company, against the appellant here on this bond, this Court speaking through Mr. Justice WHITFIELD said:

"The instructions to bidders embraced a blank copy of a 'contractor's bond,' to be executed by the principal and surety, without seals, which blank form contained a provision that the contractor 'shall fully and promptly pay all claims for supplies, labor and materials used in the construction;' but this form of 'contractor's bond' was not executed by the contractor or by the surety company, and the bond executed by the surety company contains no such

provision. The notice to bidders stated that 'the duly executed bond' would be a part of the contract.

"The contract entered into by the city and the contractor, dated November 3rd, 1926, stipulated that the contractor would at his own cost and expense do all the work, furnish all the materials, equipment and labor necessary to do the same, and under penalty of the bond attached hereto, and bearing date of November 1st, 1926.' No bond 'bearing date of November 1st, 1926,' appears in the record. The contract made no reference to the bond that was given by the surety dated January 5th, 1927."

"The bond here sued on was executed January 5, 1927, by the surety company, but not by the contractor * * *.

"The surety company was not a party to the construction negotiations or to the 'formal contract' executed by the contractor, and the surety company is not bound by them except as made so by the bond executed by the surety company."

"There was no duty or obligation of the surety company to enter into the bond that the statute requires the contractor to execute 'before commencing' the 'public work.' If a surety company executes a penal bond purporting in terms or in substance or by sufficient reference to be in accordance with or for the purpose of complying with the requirements of the statute in cases of such contracts, as to 'additional obligation that such contractor shall promptly make payments to all persons supplying him labor, materials and supplies used directly or indirectly in the prosecution of the work provided for in the contract,' the surety company will be liable as provided by the statute. Fulghum v. State, 92 Fla. 662, 109 So. 644. But in this case the bond merely refers to and makes the contract (not the notice to bidders or the bids or other negotiations) a part of the bond 'as fully and to the same extent as if copied at length herein,'

and the contract with the city as executed by the contractor contains no stipulations as to paying for material, labor, or supplies furnished by others for the work, and the bond merely obligates the surety to indemnify the city 'against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract,' the city not being liable for labor, material, or supplies furnished by others to the contractor, and such bond executed by the surety company does not purport to be executed in compliance with the statute, or to contain by reference or otherwise the provisions contemplated by the statute, but the surety bond contains provisions that are inconsistent with the statute. The liability of the surety company, therefore, is to be measured by the terms of the bond, in the absence of controlling contrary provisions of law regulating the subject. See Fid. & Dep. Co. of Md. v. Crane Co., 178 Ark. 676, 12 S. W. (2nd) 872. See, also, Philip Carev Co. v. Md. Cas. Co., 201 Iowa 1063, 206 N. W. 808, 47 A. L. R. 495. See also McCrary Co. *et al.* v. Dade County, 80 Fla. 652, 86 So. 612."

\* \* \*

"The bond of the surety company in this case does not by its terms or by reference or otherwise indicate that it was given pursuant to, or for the purposes designed by, the statute; and, as the statute does not expressly or impliedly forbid the giving of such a bond as was executed and does not expressly or by intendment make the statutory provisions apply notwithstanding the terms of the bond, the liability of the surety company depends upon the terms of its bond, which do not cover liability for labor, material, and supplies used by contractors in the street improvement provided for in the contract with the city. The bond refers to the contract with the city, but the contract contains no

promise to pay for material and labor used under the contract."

The principal changes in the amended bill, as compared with the original bill, are embraced in paragraph 3, which reads as follows:

"That by reason of certain legal technicalities connected with the issuance and sale by your orator of its municipal bonds for the purpose of providing funds to pay for the contract work, it was agreed between your orator and said Baker & Foulks, Inc., to postpone the commencement of the contract work from time to time and until the month of January, 1927, and work under said contract did not commence until January or February, 1927, and by reason of such delay in the commencement of the work, no contract bond was furnished by the said Baker & Foulks, Inc., until the latter part of January, 1927, at which time the said Baker & Foulks, Inc., signed and delivered the said contract aforesaid. That at or about the time of the delivery of said contract to your orator, executed by said Baker & Foulks, Inc., they presented to your orator, by and through a representative of said Baker & Foulks, Inc., a bond, alleging and representing that the said bond was the bond provided for in the contract aforesaid. That the said bond was duly executed and had attached thereto a power of attorney of a local insurance company, and the same was delivered to the Engineer of your orator in charge of such matters. That the Engineer relied upon the statement and representations of Baker & Foulks, Inc., who then and there presented the said bond on behalf of themselves and the said bonding company, that the said bond was in the form prescribed by the contract aforesaid and was the bond called for by the said construction contract as awarded to the said Baker & Foulks, Inc. That in the bidding off of said work by the said Baker & Foulks, Inc., they in-

cluded in their bid an amount representing one per cent. (1%) of the work for the payment of said bond, which is customary and usual in such cases. That the said Baker & Foulks, Inc., well understood that your orator did require a bond to protect material, men, laborers, and all other persons provided for to be protected by the statute aforesaid, and that the said Baker & Foulks, Inc., made said representations to the bonding company aforesaid, to-wit: the said Continental Casualty Company, and did represent to said company that they required a bond in the form prescribed in the contract aforesaid, and offered to pay to the said defendant Continental Casualty Company the premium for such bond, to-wit, one per cent. (1%), or a total of Twelve Hundred, Eighty Dollars ($1280.00), which was the usual and customary premium upon such bond. That the said Baker & Foulks, Inc., fully believed that the bond presented by them was in the form prescribed as aforesaid and the bond intended to be obtained. That the said bond provided for by the contract aforesaid was the usual customary bond and such was the bond which the said Baker & Foulks, Inc., applied to the defendant Continental Casualty Company for, and presented and showed to the agents and representatives of the Continental Casualty Company the contract herein referred to, and the said Baker & Foulks, Inc., paid to the Continental Casualty Company, defendant herein, the premium upon a bond containing the usual customary provisions, as was intended by the agreement between it and your orator, and the said defendant surety company herein contracted and agreed to give such bond, and it was the intention of the surety company to execute such bond and it, in the bond referred to and given as aforesaid, did then and there make reference to the contract aforesaid and make the same a part of said bond, and your orator charges that it was through oversight and

mistake of the parties that the said surety company did not sign the bond and become obligated, as the parties understood and intended. That the bond presented by the defendant was not in the form prescribed by the said contract with the said Baker & Foulks, Inc., and in the form intended by the parties, but was in a different form, and did not contain the provisions and stipulations as contemplated by the law aforesaid and by the contract between your orator and the said Baker & Foulks, Inc. A copy of said bond so presented, with the power of attorney referred to, is hereto attached, marked Exhibit 'B,' and made a part of this amended bill of complaint. Your orator further says that the bond as given did not bind the said defendant, as your orator believes and charges, to pay for supplies and labor furnished in the performance of said work, but that all of such matters as are intended to be covered by the Statute aforesaid were omitted. That the bond so presented and signed by the defendant Continental Casualty Company and by mistake accepted by your orator, through its agents as aforesaid, was not of the same kind or class of bonds intended by the parties, because your orator charges that the rate or premium upon the bond presented was far less than the bond intended to be given, but in truth and in fact, the said Baker & Foulks, Inc., paid the premium upon the bond intended to be given, which was far in excess of the premium upon the kind and class of bond actually given; yet the said defendant Continental Casualty Company, by its agents, accepted the premium upon a bond of the kind and character intended by the Statute, and at no time did it advise your orator or the said Baker & Foulks, Inc., that it was not intending to become bound and obligated, as was intended by the Statute aforesaid, but as stated, accepted the premium for the higher class of bond, which was demanded by your

orator as aforesaid, and indirectly paid for by it as a part of the construction of the work provided for under the contract with the said Baker & Foulks, Inc. That your orator's said Engineer believed the said representations made by the defendant Baker & Foulks, Inc., on its own behalf and on behalf of the defendant Continental Casualty Company and relied upon them, and in such reliance filed the said bond among the records of the City of Ocala without submitting said bond for approval or acceptance to the Counsel of the City of Ocala or to its City Council or to any officer thereof, and the terms and provisions of said bond were never brought to the attention of any of the representatives of your orator authorized to pass upon or accept the same and the said bond was never approved or accepted by the City of Ocala in any manner other than by allowing the said contractor Baker & Foulks, Inc., to commence and proceed with the performance of the contract work under said contract, which permission by your orator was predicated upon the assumption that the said Baker & Foulks, Inc., had furnished a suitable bond conforming to the requirements of said contract as reported by your orator's said engineer in reliance upon said representations of Baker & Foulks, Inc., and your orator believed and relied upon such report of its Engineer and the said representations so made to him, in allowing the defendant Baker & Foulks, Inc., to commence and proceed with the contract work."

The allegation that the surety company "contracted and agreed to give such bond" fails to allege with whom it so contracted, but the inference is that such contract, whatever it was, was made by the surety company with Baker & Foulks, Inc. Thus the amended bill fails to show that there was ever any contract or agreement entered into between the City and the surety company as to the form of bond,

and thus fails to measure up to the rule laid down in Fidelity Phenix Fire Insurance Company v. Hilliard, *supra,* wherein it was said that in reforming a written contract "the want of conformity to the agreement *of the parties* must be occasioned by a mistake which is mutual and common to both parties to the instrument."

Furthermore, the bond as written, and which is attached as an exhibit to the bill, expressly states: "That the surety shall not be liable for the furnishing of any bond or obligation other than this instrument."

Briefly analyzed, the amended bill showed that the City of Ocala let a contract to Baker & Foulks, Inc., to construct street paving. It instructed Baker & Foulks, Inc., that it required a bond of $128,000 conditioned upon the faithful performance of the contract and to pay all claims for labor and materials furnished pursuant to the contract. Then Baker & Foulks, Inc., went to the surety company and applied for a bond of the character stated. Just what transpired between them does not clearly appear from the amended bill. The City was not a party to these negotiations. The surety company did not give such a bond, but another bond for one-half the amount which the City by its instructions to bidders required the contractor to furnish and which contained only the obligation to indemnify the City in the event of non-performance of the contract, though it was paid a premium by Baker & Foulks, Inc., for the kind of bond which they had applied for. It is alleged that this was by mutual mistake of the parties, but the word "parties" obviously means Baker & Foulks, Inc., and the surety company. Baker & Foulks, Inc., delivered this bond to the City Engineer, who filed it away without reading it and without referring the same to the City Attorney or any other city official for approval. As already stated, this bond was radically different from that proposed

by the City to be secured and furnished by the contractor, in many respects, the outstanding differences being that, instead of being a bond for $128,000, it was for $64,000, and that there was an entire absence of any obligation binding the surety company to pay claims for supplies, labor and materials used in the construction work. On the contrary it expressly provided: "That no right of action shall accrue upon or by reason hereof to or for the use or benefit of anyone other than the obligee herein named."

Undoubtedly the allegations of the amended bill puts the surety company in a very unenviable light. Baker & Foulks, Inc., could have rejected the bond as executed and delivered, or, having accepted it, could have sued the surety company for the excess premium; or, if, having accepted the bond by reason of mutual mistake of the parties, could possibly have maintained a bill in equity for reformation, unless precluded by negligence or laches. Likewise the City could have refused to accept the bond, as tendered to them by Baker & Foulks, Inc., as not being the kind of bond which it had instructed all bidders, including Baker & Foulks, Inc., it would require them to furnish the City.

But the question arises, could the City, having, by reason of the negligence of its officials, impliedly accepted the bond as delivered, and by permitting the work to be done without raising any question about it, afterwards, when the work under the contract had been done, sue the surety company for a reformation of the bond so as to make it conform to the alleged understanding and agreement between Baker & Foulks, Inc., and the surety company? This question could only be answered in the affirmative if it be assumed that Baker & Foulks, Inc., in the negotiations with the surety company for the execution of the bond, were acting as *the agents* of the City; and also assuming that the City had not been guilty of such negligence as precluded it from

seeking the aid of a Court of Equity to require such reformation. We do not understand the allegations of the bill to go so far as to allege that Baker & Foulks, Inc., were acting as agents of the City in the negotiations with the surety company to procure such bond. The mere fact that the instructions to bidders required the contractor to procure and furnish the City with a certain kind of bond, to be executed by a surety company, did not make Baker & Foulks, Inc., the agents of the City in their negotiations for and procurement of the bond, or as to the premium agreed on or paid, and did not make the City liable for any representations Baker & Foulks might have made to the surety company in order to procure the execution thereof. In these negotiations Baker & Foulks, Inc., were acting for themselves. It was up to them to post with the City such a bond as the City required. The City was not a party to the negotiations or the agreement between Baker & Foulks, Inc., and the surety company, with reference to the execution of the bond, or the kind of bond to be executed. The fact that the City was to be the obligee of the bond did not make the principal obligor (who should have signed the bond as principal, but who failed to do so) the agent of the City. To so hold would be to hold that the City through its agents was executing a bond to itself. As a matter of fact and of law, the contractor, Baker & Foulks, Inc., and the City were by no means agents one of the other, but were parties to a contract, dealing with each other at arms length. And, as was said by Mr. Justice WHITFIELD, in City of Ocala v. Continental Casualty Company, *supra:* "The surety company was not a party to the construction negotiations or to the formal contract executed by the Contractor, and the surety is not bound by them as made so by the bond executed by the surety company." Furthermore, as was pointed out in the same case, "the bond merely refers

to and makes *the contract* (not the notice to bidders or the bids or the other negotiations) a part of the bond 'as fully and to the same extent as if copied at length herein,' and the contract with the City as executed by the Contractor contains no stipulations as to paying for materials, labor, or supplies furnished by others for the work, and the bond merely obligates the surety to indemnify the City 'against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract;' *the City not being liable for labor, materials, or supplies furnished by others to the Contractor,"* etc. (Italics supplied.)

Thus, the bill as amended fails to show that there was ever any agreement between the surety company and the City as to the form or kind of bond which Baker & Foulks, Inc., applied to the surety company to execute. Hence it cannot be said that the bond as written failed to conform to any agreement which had been entered into between the *surety company* and *the City*. Therefore, under the authorities above cited, the amended bill was without equity and was subject to the demurrer interposed; which demurrer should have been sustained.

Even if the amended bill had been so framed as to obviate the objection above discussed there is a serious question whether such amended bill shows affirmatively that the complainant was guilty of such gross negligence as precluded it from invoking the aid of a Court of Equity to reform the bond. It shows that the city engineer received the bond relying upon the statements of the contractor as to its contents. With the instrument in his hand, he was certainly negligent in not looking at it and examining it. Furthermore, neither the city council nor the city attorney had examined the bond to see if it was acceptable, which was one of the requirements of the proposal to bidders and the contract. It shows that the bond was filed away and

never looked at until some time after the job was completed, although in the possession of the City during all that time. In Crosby v. Andrews, 61 Fla. 554, 580, 55 So. 57, 65, Justice SHACKELFORD said: ·

·"It has also been held that 'to justify the reformation of a deed for mistake, the mistake must have been mutual or else the result of fraud on the part of the party not mistaken, the evidence must be clear, satisfactory, and free from reasonable doubt, and the party seeking reformation must be free from negligence.' Payne v. Knight, 130 Iowa 113, 106 N. W. Rep. 505. Also see Persinger's Adm'r. v. Chapman, 93 Va. 349, 25 S. E. Rep. 5, wherein it was said: 'Equity will not extend its aid to one who has been guilty of culpable negligence. It requires that the party who asks relief on the ground of mutual mistake shall have exercised at least the degree of diligence which may be fairly expected from a reasonable person."

See also Class v. Craig, 83 Fla. 408, 418, 91 So. 332; Greil v. Tillis, 170 Ala. 391, 54 So. 524; and Grieve v. Grieve, 89 Pac. 569, 9 L. R. A. (N. S.) 1211. However, we do not feel called upon to decide this question.

For the reasons above pointed out, the order appealed from must be reversed.

Reversed and remanded.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.