990 So.2d 695 (2008)
Michael GOODALL, as assignee of MKJH, L.L.C., Appellant,
v.
WHISPERING WOODS CENTER, L.L.C., a Florida limited liability company, Appellee.
No. 4D08-94.
District Court of Appeal of Florida, Fourth District.
September 24, 2008.
*697 Michael P. Hamaway of Mombach, Boyle & Hardin, P.A., Fort Lauderdale, for appellant.
Richard H. Bergman of Bergman & Jacobs, P.A., Hollywood, for appellee.
ROSENBERG, ROBIN, Associate Judge.
The issue in this case is whether Michael Goodall, as assignee of MKJH, LLC, stated a cause of action for reformation against Whispering Woods Center, L.L.C. We hold that Goodall stated a cause of action for reformation and reverse the trial court's dismissal of Goodall's claims for reformation and breach of contract as reformed. We affirm the trial court's dismissal of the remaining claims for rescission and unjust enrichment.
This is an appeal from an amended order of dismissal for failure to state a cause of action. See Fla. R. Civ. P. 1.140(b)(6). In reviewing an order granting a motion to dismiss, this court's "gaze is limited to the four corners of the complaint." Gladstone v. Smith, 729 So.2d 1002, 1003 (Fla. 4th DCA 1999). The facts alleged in the complaint must be accepted as true and all reasonable inferences are drawn in favor of the pleader. See id. "Because a ruling on a motion to dismiss for failure to state a cause of action is an issue of law, it is reviewable on appeal by the de novo standard of review." Fresh Capital Fin. Servs., Inc. v. Bridgeport Capital Servs., Inc., 891 So.2d 1142, 1143 (Fla. 4th DCA 2005) (quoting Bell v. Indian River Mem'l Hosp., 778 So.2d 1030, 1032 (Fla. 4th DCA 2001)).
The complaint alleges that on or about June 15, 2005, Whispering Woods and MKJH entered into the Whispering Woods Center Reservation Deposit Agreement, preparatory to the purchase and sale of certain commercial real property. The planned use of the property was a health club. The Deposit Agreement set out the purchase price and stated: "This price includes the developer raising the ceiling height of the purchaser's suites to a height of 12 feet clear ceiling height." The purchase price was increased from the base rate by $7.00 per square foot in contemplation of the extra costs in providing the twelve foot ceilings. The purchase price for the building, as recited in the Deposit Agreement, was approximately $1,422,600. The Deposit Agreement required an initial deposit of $70,000.
On August 22, 2005, MKJH entered into a Purchase and Sale Agreement with Whispering Woods for the purchase and sale of the property.[1]
The complaint further alleges that prior to execution, Whispering Woods represented that it would prepare the Purchase Agreement with identical substantive terms as set forth in the Deposit Agreement. *698 Specifically, Whispering Woods represented that it would prepare the Purchase Agreement with the same price as agreed upon in the Deposit Agreement and with the same obligations to raise the ceiling height to "twelve feet clear ceiling" to accommodate the planned health club facility.
While the Purchase Agreement recites essentially the same purchase price as the Deposit Agreement ($1,422,652), it provides for only ten foot ceilings. According to the complaint, at the time that MKJH executed the Purchase Agreement, neither MKJH nor its representatives were aware that the contract term regarding "12 foot clear ceiling height" had been changed to ten foot ceiling height in the Purchase Agreement.
The complaint further alleges that Whispering Woods surreptitiously intended to deceive and defraud MKJH by recovering a windfall for itself to which it would not otherwise be entitled. In the alternative, the complaint alleges that the execution of the Purchase Agreement was the result of mutual mistake by the parties as the ten foot ceiling height does not express the parties' intent. As written, the Purchase Agreement would create a windfall to Whispering Woods and the resulting building would not be suitable for its intended purpose as a health club.
Paragraph 24 of the Purchase Agreement, attached to the complaint, states:
24. Entire Agreement. PURCHASER CERTIFIES THAT PURCHASER HAS READ EVERY PROVISION OF THIS AGREEMENT AND EACH ADDEDUM ATTACHED HERETO (IF ANY) AND THAT THIS AGREEEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PURCHASER AND SELLER. THIS AGREEMENT IS THE ENTIRE AGREEMENT FOR THE SALE AND PURCHASE OF THE UNIT AND ONCE THIS AGREEMENT IS SIGNED THIS AGREEMENT CAN ONLY BE AMENDED IN WRITING. PRIOR AGREEMENTS, REPRESENTATIONS, UNDERSTANDINGS, AND ORAL STATEMENTS NOT REFLECTED IN THS AGREEMENT HAVE NO EFFECT AND ARE NOT BINDING ON SELLER. PURCHASER ACKNOWLEDGES THAT PURCHASER HAS NOT RELIED ON ANY REPRESENTATION, NEWSPAPER, RADIO OR TELEVISION ADVERTISEMENTS, WARRANTIES, WHATSOEVER, WHETHER WRITTEN OR ORAL, MADE BY SELLER, SALESPERSONS, AGENTS, OFFICERS, EMPLOYEES, CO-OPERATING BROKERS (IF ANY) OR OTHERWISE EXCEPT AS HEREIN SPECIFICALLY REPRESENTED. PURCHASER HAS BASED PURCHASER'S DECISION TO PURCHASE THE UNIT ON PERSONAL INVESTIGATION, OBSERVATION AND THE CONDOMINIUM DOCUMENTS.
After the Purchase Agreement was executed, the commercial space was built-out with ten foot ceilings. On March 13, 2006, MKJH assigned its interest in the Purchase Agreement to Michael Goodall.
On March 27, 2007, Goodall sent a letter declaring Whispering Woods in default for delivering ten foot ceilings and demanding that Whispering Woods raise the ceiling height to twelve feet or refund the deposit. Whispering Woods refused both demands. A deposit in the amount of $284,530.40 currently is held in escrow.
Goodall filed a four-count complaint against Whispering Woods for reformation of the Purchase Agreement, breach of the contract as reformed, rescission and unjust *699 enrichment. Whispering Woods moved to dismiss for failure to state a cause of action, relying primarily on the merger and integration clause in paragraph 24 of the Purchase Agreement. The trial court granted the motion, dismissing the complaint with prejudice, without explanation. This appeal follows.
A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. Tobin v. Mich. Mut. Ins. Co., 948 So.2d 692 (Fla.2006) (quoting Providence Square v. Biancardi, 507 So.2d 1366, 1369 (Fla.1987)); Blumberg v. Am. Fire & Cas. Co., 51 So.2d 182 (Fla.1951); Brandsmart U.S.A. of W. Palm Beach, Inc. v. Dr. Lakes, Inc., 901 So.2d 1004, 1005 (Fla. 4th DCA 2005); USAA Cas. Ins. Co. v. Threadgill, 729 So.2d 476, 478 (Fla. 4th DCA 1999); Circle Mortgage Corp. v. Kline, 645 So.2d 75, 77 (Fla. 4th DCA 1994); Malt v. R.J. Mueller Enters., Inc., 396 So.2d 1174 (Fla. 4th DCA 1981).
The principle of reformation is applicable to instruments of conveyance of real property as well as to contracts. Providence Square, 507 So.2d at 1369; Crompton v. Kirkland, 157 Fla. 89, 24 So.2d 902 (1946). In reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective instrument so that it accurately reflects the true terms of the agreement actually reached. Providence Square, 507 So.2d at 1370; Porter v. Meigs, 74 So.2d 82 (Fla.1954).
A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument. See Providence Square, 507 So.2d at 1372; Blumberg, 51 So.2d at 184; Circle Mortg. Corp., 645 So.2d at 78. The allegations in the complaint that Whispering Woods' failure to provide the agreed upon twelve-foot ceiling height was the result of a mutual mistake and not expressive of the parties' true intent is sufficient to state a cause of action for reformation based on mutual mistake.
Reformation also is proper when there is a mistake on the part of one side of the transaction and inequitable conduct on the part of the other side. Providence Square, 507 So.2d at 1372 n. 3; Noack v. Blue Cross Blue Shield of Fla., Inc., 859 So.2d 608, 610-611 (Fla. 1st DCA 2003). As an alternative to mutual mistake, the complaint alleges that Whispering Woods' omission of the twelve-foot ceiling height provision in the Purchase Agreement was intended to deceive and defraud MKJH, thus causing a unilateral mistake on the part of MKJH in executing the Agreement. This allegation also states a cause of action for reformation based on Whispering Woods' inequitable conduct.
The trial court erroneously found Hillcrest Pacific Corp. v. Yamamura, 727 So.2d 1053 (Fla. 4th DCA 1999), controlling in this case. Hillcrest holds that one cannot state a cause of action for fraud based on alleged misrepresentations that are adequately covered or expressly contradicted in a later written contract. Hillcrest Pacific Corp., 727 So.2d at 1056. In Hillcrest, the agreement which was attached as an exhibit to the amended complaint, plainly contradicted the allegations of the complaint and thus, was inconsistent with Pacific's claim for fraud in the inducement. Id. Although Pacific alleged that the appellees misrepresented the "price" of the property, the price was clearly stated in the agreement.
In its holding, Hillcrest relied upon the well settled law in Florida that any document *700 attached to a complaint as an exhibit is considered a part of the pleading. Geico Gen. Ins. Co. v. Graci, 849 So.2d 1196 (Fla. 4th DCA 2003); Nicholas v. Ross, 721 So.2d 1241, 1243 (Fla. 4th DCA 1998); Fla. R. Civ. P. 1.130(b). When there are conflicts between the allegations of a complaint and the documents attached as exhibits to the complaint, the plain language of the documents control. Geico Gen. Ins. Co., 849 So.2d at 1199.
However, Hillcrest deals with a tort claim for fraudulent inducement and not with the reformation of a contract as alleged in this case. Unlike an action for fraudulent inducement, a reformation action seeks to modify or correct an otherwise clear and unambiguous contract provision that is adequately covered by a written contract. The essence of a reformation action is to correct an often obvious mistake that was made either inadvertently or as a result of improper conduct. Allegations of fraudulent or inequitable misconduct might be pertinent to both a reformation cause of action and a claim for fraudulent inducement. However, the two causes of action remain fundamentally different. Thus, Hillcrest, as applied to a fraudulent inducement claim, finds no conflict with appellant's position in this case.
Whispering Woods relies on the merger and integration clause of the Purchase Agreement to preclude the remedy of reformation. Under the doctrine of merger in deed, preliminary understandings, negotiations and agreements regarding conveyance are held to merge in the deed, leaving it as the sole expositor of the parties' intent. This doctrine is inapplicable in an action seeking the equitable remedy of reformation. Providence Square, 507 So.2d at 1371; Southpointe Dev. Inc. v. Cruikshank, 484 So.2d 1361 (Fla. 2d DCA), review denied, 492 So.2d 1330 (Fla. 1986); Noack, 859 So.2d at 610-611 (Fla. 1st DCA 2003) (the merger clause does not preclude relief by the equitable remedy of reformation). Thus, as applied to the facts of this case, the merger and integration clause does not bar relief by reformation.
Whispering Woods also seeks to defeat Goodall's claim for reformation on the grounds that appellant was negligent in failing to read the Agreement carefully and ascertain the mistake prior to executing the Agreement. Ordinarily, one who signs a written instrument without reading it with care is bound in accordance with its written terms. All Fla. Sur. Co. v. Coker, 88 So.2d 508, 510 (Fla.1956); RESTATEMENT (SECOND) OF CONTRACTS § 157, cmt. b. However, the Restatement recognizes an exception to this rule where the parties actually previously agreed on the terms to be included in the written contract:
The exceptional rule stated in the present Section with regard to reformation has no application to the common case in which the term in question was not the subject of prior negotiations. It only affects cases that come within the scope of § 155, under which there must have been an agreement that preceded the writing. In such a case, a party's negligence in failing to read the writing does not preclude reformation if the writing does not correctly express the prior agreement.
RESTATEMENT (SECOND) OF CONTRACTS § 157, cmt. b.
It would eviscerate reformation to hold that the failure to carefully read the final instrument bars the remedy. While some level of negligence will bar a reformation claim based on mutual mistake, it is unclear whether ordinary negligence is sufficient to bar the action, or whether gross negligence is required.
It has been said that mere negligence in executing or accepting a written contract *701 is not a bar to reformation where the ground for relief is mutual mistake. Mistakes nearly always presuppose negligence, and so it is evident that the rule which permits reformation on the ground of mutual mistake does not contemplate that mere negligence will bar an action for reformation.
M.L. Cross, Negligence in Executing Contract as Affecting Right to Have It Reformed, 81 A.L.R.2d 7 (1962).
The Florida Supreme Court has articulated different standards that may preclude a complainant from invoking the aid of the court of equity. Whispering Woods relies upon Graham v. Clyde, 61 So.2d 656, 657 (Fla.1952), which involved an action for rescission on the ground of a unilateral mistake made in computing items of a bid to argue that a "negligence" or "reasonable care of diligence" standard applied to preclude relief.
However, we choose to follow a case more factually similar to this one, Continental Cas. Co. v. City of Ocala, 111 Fla. 209, 149 So. 381 (1933). Like this case, Continental Casualty involved a reformation action; the case concerned the plaintiff's failure to read a bond. The Court questioned whether the plaintiff there was "guilty of such gross negligence as precluded it from invoking the aid of a court of equity to reform the bond." 149 So. at 386. Based on Continental Casualty, we conclude that it is a plaintiff's gross negligence that will prevent him from obtaining reformation from a court of equity.[2]
The question of whether one who seeks reformation is guilty of gross negligence is one of fact to be determined in the light of the circumstances of the particular case and thus is not proper for disposition on a motion to dismiss. See Cont'l Cas. Co., 149 So. at 386; M.L. Cross, Negligence in Executing Contract as Affecting Right to Have It Reformed, 81 A.L.R.2d 7 at § 2. Additionally, where fraud or inequitable conduct is a ground upon which reformation is sought, such as in this case, the negligence of the complaining party is not a defense. Graham, 61 So.2d at 657; 81 A.L.R.2d 7 at § 2.
Goodall argues that, because the other counts in his complaint depend on the reformation count, a reversal of the reformation cause of action should be as to all claims. The breach of contract action is premised on the reformation of the contract and likely was dismissed because no reformation was permitted. This claim should be reinstated along with the reformation count. However, the rescission and unjust enrichment counts do not depend on a reformation of the contract and, in fact, assume that there will be no contract. While the basis for dismissal of these counts is not clear, Goodall did not articulate in his initial brief why reversal should extend to the rescission and unjust enrichment counts. Thus, the dismissal of *702 these counts is affirmed on the grounds of abandonment.
Affirmed in part, Reversed in part and Remanded.
STONE and GROSS, JJ., concur.
NOTES
[1] The Deposit Agreement and Purchase and Sale Agreement were attached to the complaint and therefore must be considered as though fully alleged in the pleading. See Fla. R. Civ. P. 1.130(b).
[2] Taking a slightly different approach than Continental Casualty, the Restatement suggests that a "failure to act in good faith and in accordance with reasonable standards of fair dealing" bars the action. See RESTATEMENT (SECOND) OF CONTRACTS § 157. However, the Restatement section governing reformation recognizes, in comment a, that:

Indeed, since a party can often avoid a mistake by the exercise of [reasonable] care, the availability of relief would be severely circumscribed if he were to be barred by his negligence. Nevertheless, in extreme cases the mistaken party's fault is a proper ground for denying him relief for a mistake that he otherwise could have avoided.
RESTATEMENT (SECOND) OF CONTRACTS § 157, cmt. a. Comment a is similar to the approach taken by the supreme court in Continental Casualty.