In re AUM SHREE OF TAMPA, LLC,
d/b/a Comfort Inn, Debtor.

Aum Shree of Tampa, LLC, d/b/a
Comfort Inn, Plaintiff,

v.

HSBC Bank USA, National Association,
as Indenture Trustee under that certain indenture dated as of June 1,
2005, Defendant.

HSBC Bank USA, National Association,
as Indenture Trustee under that certain indenture dated as of June 1,
2005, Counterplaintiff,

v.

Aum Shree of Tampa, LLC, d/b/a
Comfort Inn, Counterdefendant.

HSBC Bank USA, National Association,
as Indenture Trustee under that certain indenture dated as of June 1,
2005, Third–Party Plaintiff,

v.

Florida Business Development
Corporation, Third–Party
Defendants.

Bankruptcy No. 8:10–bk–06231–CED.
Adversary No. 8:10–ap–00391–CED.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 17, 2011.

David W. Steen, David W Steen, P.A., Tampa, FL, for Plaintiff.

Robin S. Trupp, Ronald J. Marlowe, Arnstein & Lehr LLP, Tampa, FL, for Third–Party Plaintiff.

### ORDER GRANTING HSBC BANK'S MOTION FOR SUMMARY JUDGMENT

CARYL E. DELANO, Bankruptcy Judge.

**THIS CASE** came on for hearing on March 23, 2011, March 25, 2011, and April 8, 2011, on the Motion for Summary Judgment (Adv. Doc. No. 106)[1] filed by HSBC Bank USA, N.A., as Indentured Trustee of the 2005–A Trust ("HSBC"), as to Counts I through VIII of the Amended Complaint (Adv. Doc. No. 45) filed by Aum Shree of Tampa, LLC (the "Debtor") and on HSBC's claim for reformation as set forth in its Amended Counterclaim and Third Party Complaint (Adv. Doc. No. 46). For the reasons set forth hereinafter, the Court finds that there is no genuine issue of material fact and that judgment should be entered in favor of HSBC on all counts. This Order supplements the Court's ruling announced orally in open court on April 8, 2011.

---

1. References to "Adv. Doc. No." are to the docket in this adversary proceeding, Adv. No. 10–391. References to "Doc. No." are to the docket in the Debtor's main bankruptcy case, Case No. 10–6231.

## UNDISPUTED FACTS

The following facts ("Undisputed Facts") are not in dispute:

1. In 2005, the Debtor purchased a hotel in Pasco County, Florida (the "Property") using the proceeds of two loans from BLX Capital, LLC, now known as Ciena Capital Funding, LLC ("Ciena" or "BLX"). The loans were secured by two mortgages on the Property. The notes and mortgages are referred to herein as the "1601 Note," secured by the "1601 Mortgage" (because the mortgage was recorded on Page 1601 of Official Records Book 6281), and the "1632 Note," secured by the "1632 Mortgage" (because the mortgage was recorded on Page 1632 of Official Records Book 6281). The 1632 Note was in the original principal amount of $1,670,000. The 1601 Note was in the original principal amount of $1,169,000.

2. The Debtor does not dispute that it executed the notes and mortgages in favor of BLX and that the Debtor received the loan proceeds.

3. Although the Debtor and BLX intended that the 1632 Note be secured by a first mortgage on the Property, through inadvertence, the 1601 Mortgage was recorded prior to the 1632 Mortgage. The priority of the mortgages was reversed by a *Subordination Agreement* (the "Subordination Agreement") recorded in Official Records Book 6303 at Page 1585. In somewhat confusing language, the Subordination Agreement effected the subordination of the 1601 Mortgage to the 1632 Mortgage, resulting in the 1632 Note's being secured by the first mortgage on the Property.

4. Effective December 1, 2005, the Debtor, BLX and the Florida Business Development Corporation ("FBDC"—although referred to in the record as the "CDC") executed an *Assignment of Note and Mortgage Modification Agreement*, recorded on January 3, 2006, in Official Records Book 6778 at Page 621 (the "621 Assignment"). The 621 Assignment assigned all of BLX's rights in the 1601 Note and to the 1601 Mortgage to FBDC. The 1601 Note was simultaneously replaced by a *Renewal Note* in the amount of $1,201,000 executed in favor of FBDC (the "Renewal Note"). Although the 621 Assignment referred specifically to the 1601 Note and/or the Renewal Note, it contained the Official Records Book and Page reference to the 1632 Mortgage instead of to the 1601 Mortgage.

5. Contemporaneously, FBDC assigned its rights in the 1601 Note/Renewal Note and the 1601 Mortgage to the United States Small Business Administration ("SBA") by an endorsement appearing on the Renewal Note and by an *Assignment of Mortgage* recorded in Official Records Book 6778 at Page 638 (the "638 Assignment"). Although the 638 Assignment referred specifically to the 1601 Note and/or the Renewal Note, it contained the Official Records Book and Page reference to the 1632 Mortgage instead of to the 1601 Mortgage.

6. On April 11, 2006, BLX recorded a *Satisfaction of Mortgage* of the 1601 Mortgage in Official Records Book 6931 at Page 1622 (the "1601 Satisfaction"). If the 621 Assignment and the 638 Assignment had referred to the 1601 Mortgage instead of to the 1632 Mortgage, BLX would not have been record holder of the 1601 Mortgage on the date that it recorded the Satisfaction of Mortgage.

7. On October 30, 2009, BLX (under its new name "Ciena") filed a lawsuit against the Debtor in the Circuit Court of Pasco County, Florida, seeking to foreclose upon the 1632 Note and the 1632 Mortgage (the "Foreclosure Suit"). The Debtor did not timely file a response to the complaint and

default was entered against it. On February 15, 2010, Ciena filed an amended complaint identifying HSBC as the plaintiff in the Foreclosure Suit. On March 8, 2010, a joint stipulation was filed in the Foreclosure Suit in which the parties agreed to set aside the Debtor's default and to permit the filing of the amended complaint. Also on March 8, 2010, the Circuit Court entered an order on the joint stipulation authorizing the filing of the amended complaint which identified HSBC as the plaintiff. (Adv. Doc. No. 132, Exs. 2 and 3.)

8. On March 19, 2010, the Circuit Court entered an order in the Foreclosure Suit appointing a receiver for the Debtor effective upon the posting of a receiver bond. (Adv. Doc. No. 132, Ex. 4.) On March 19, 2010, prior to the bond's being posted, the Debtor filed this Chapter 11 bankruptcy case.

9. On June 2, 2010, HSBC timely filed its proof of claim with supporting documentation evidencing amounts due it under the 1632 Note and the 1632 Mortgage. (Claim No. 8.)

10. On August 9, 2010, the SBA timely filed its proof of claim with supporting documentation evidencing amounts due it under the Renewal Note/1601 Note and the 1601 Mortgage. (Claim No. 9.)

11. On August 13, 2010, HSBC filed notices of the SBA's transfer to HSBC of Claim No. 9 (the Renewal Note/1601 Note and the 1601 Mortgage) and of the SBA's transfer to HSBC of whatever rights the SBA had, if any, in Claim No. 8 (the 1632 Note and 1632 Mortgage). (Doc. Nos. 174 and 175.) The Debtor did not object to the notices of transfer.

12. The Affidavit of Tammie Williams establishes that HSBC is in possession of the original 1601 Note and the 1601 Mortgage, as well as the Renewal Note, and the 1632 Note and 1632 Mortgage. (Adv. Doc.

No. 141.) In addition, counsel for HSBC made a proffer in open court that he was in possession of those documents and offered to permit Debtor's counsel to inspect them. (Adv. Doc. No. 143, Transcript of March 23, 2011 hearing, pp. 19–23 and 57–59.)

13. Uncontroverted affidavits submitted by HSBC establish that the 621 Assignment contained a scrivener's error and was intended to effect the assignment of the 1601 Note and mortgage from BLX to FBDC. (Affidavit of Cynthia Herring on behalf of Ciena/BLX, servicer for HSBC as Trustee of 2005–A Trust (Adv. Doc. No. 106, Ex. 4); Affidavit of Noonan Patel, the Debtor's former managing member (Adv. Doc. No. 106, Ex. 1); Affidavit of Emmanuel Manos, president of FBDC (Adv. Doc. No. 106, Ex. 2) (FBDC makes no claims as to the Renewal Note/1601 Note); Affidavit of Audrey Goldman on behalf of the SBA (Adv. Doc. No. 106, Ex. 3).)

14. The Debtor's Chapter 11 case has been pending since March 19, 2010. No party other than HSBC, the FBDC, BLX/Ciena or the SBA has asserted a claim in this case relating to the notes and mortgages. The affidavits filed in support of the Motion for Summary Judgment establish that the Renewal Note/1601 Note, 1601 Mortgage, 1632 Note and 1632 Mortgage are now held by HSBC.

15. The affidavit of the Debtor's current managing member Usha Patel (Adv. Doc. No. 130) establishes that the Debtor has made payments on the 1632 Note to Business Loan Center, LLC. As set forth in the affidavit of Thomas Danehey, Business Loan Center, LLC, is an affiliate of Ciena, HSBC's loan servicer. (Adv. Doc. No. 154, Ex. 1.)

16. There has been no evidence presented by the Debtor that any party other than HSBC, the FBDC, Ciena or the SBA is the holder of the notes and mortgages.

17. The affidavits of Audrey Goldman and Cynthia Herring establish that HSBC gave consideration for the assignments to it of the Renewal Note/1601 Note and 1601 Mortgage and the 1632 Note and 1632 Mortgage. (Adv. Doc. No. 106, Exs. 3 and 4.)

18. The Debtor initiated this Adversary Proceeding on April 1, 2010. On August 30, 2010, the Debtor filed an Amended Complaint (Adv. Doc. No. 45). The Amended Complaint states claims for relief against HSBC as follows:

Count I—to value HSBC's claim and to avoid its alleged liens pursuant to Section 506 [2];

Count II—for violation of Fla. Stat. § 701.02 and avoidance of the alleged liens pursuant to Section 544;

Count III—to avoid the alleged liens as fraudulent transfers pursuant to Section 548;

Count IV—to avoid the alleged liens as preferential transfers pursuant to Section 547;

Count V—to avoid the alleged liens pursuant to Section 549;

Count VI—to value HSBC's secured claims and to avoid its alleged liens pursuant to Section 502;

Count VII—for a determination that HSBC is not a holder in due course of the 1601 and 1632 Notes and Mortgages pursuant to Fla. Stat. § 673.302; and

Count VIII—to quiet title to the Property and to award possession to the Debtor.

19. On September 8, 2010, HSBC filed its Amended Answer, Counterclaim, and Third Party Complaint (Adv. Doc. No. 46).

HSBC's Counterclaim against the Debtor sought a determination of the nature, validity, and extent of HSBC liens pursuant to Section 506. In its Amended Counterclaim and Third Party Complaint, HSBC sued the Debtor and the FBDC for reformation of the 621 Assignment, the 638 Assignment, a Prior Lienholder's Agreement executed by BLX (Adv. Doc. No. 8, Ex. 6) and the 1601 Satisfaction. HSBC also sought a declaration that it was the "record holder of the First and Second Mortgages on the property." The Debtor filed an answer to the Counterclaim and Third Party Complaint, but the Debtor raised no affirmative defenses.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having considered the affidavits, requests for admissions and responses in support and opposition to the Motion for Summary Judgment, the pleadings in this matter, the Proofs of Claim in the main case, the transfers of those Proofs of Claim, the supporting affidavits for the Proofs of Claim in the main bankruptcy case and the Undisputed Facts, the Court rules as follows.[3]

The Court adopts the foregoing Undisputed Facts as its Findings of Fact. Pursuant to the Federal Rules of Civil Procedure, Rule 56, applicable to this proceeding by Bankruptcy Rule 7056, summary judgment is appropriate if all the evidence shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Celotex*

---

2. Unless otherwise stated, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

3. The Court also considered the Supplemental Affidavit [of Gregory D. Clark] in Opposition to HSBC's Motion for Summary Judgment filed, without Court approval, on May 4, 2011. (Adv. Doc. No. 156.)

*Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Debtor contends that issues of fact regarding alleged inconsistencies in the execution of the allonges effecting the assignments and their attachment to the 1601 Note and the 1632 Note are such that the Court cannot grant summary judgment in favor of HSBC. The Debtor also contends that HSBC has not produced the "Trust Indenture" pursuant to which it serves as Indentured Trustee under that certain indenture dated as of June 1, 2005.

For the reasons that follow, the Court finds that no genuine issue as to any material fact exists and that any issues relating to the execution or attachment of the allonges do not preclude entry of summary judgment in favor of HSBC.

### A. *HSBC Is Entitled to Summary Judgment on HSBC's Claim for Reformation.*

HSBC's Third Party Complaint for reformation seeks to reform the 621 Assignment, the 638 Assignment, the Prior Lienholder's Agreement, and the 1601 Satisfaction. Neither the SBA nor the FBDC oppose entry of a judgment based upon the Third Party Complaint. The Debtor did not raise any affirmative defenses to HSBC's reformation claim and has not offered any evidence in opposition to this claim.

■■■ A court of equity has the power to reform a written instrument where, due to mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. *Goodall v. Whispering Woods Center, LLC,* 990 So.2d 695 (Fla. 4th DCA 2008). "A mistake is mutual ... when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Id.* at 699. In

order to obtain reformation based upon mutual mistake, the party seeking reformation must prove its case by clear and convincing evidence. *BrandsMart U.S.A. of West Palm Beach, Inc. v. DR Lakes, Inc.,* 901 So.2d 1004, 1006 (Fla. 4th DCA 2005).

■■ Here, all three parties to the 621 Assignment have executed affidavits stating that their intent in executing the assignment was to assign the 1601 Mortgage, not the 1632 Mortgage, to the FBDC and that the recorded assignment contained a scrivener's error incorrectly identifying the book and page number of the mortgage being assigned. The Court finds that third parties were put on inquiry notice by inconsistent information set forth in the 621 Assignment that makes it clear that the 621 Assignment refers to a note and mortgage other than the 1632 Note and 1632 Mortgage.

The Court finds that HSBC has shown by clear and convincing evidence that the parties to the 621 Assignment intended to modify the 1601 Note and to assign the 1601 Note and Mortgage from BLX to the FBDC. In addition, the parties to the 638 Assignment intended to assign the 1601 Note and Mortgage from the FBDC to the SBA. Although the Motion for Summary Judgment did not specifically address the Prior Lienholder's Agreement, the recording information set forth in that document is facially in error, as the document specifically describes the amounts of the loans, and it is clear that the recording information was reversed and that was a scrivener's error.

Accordingly, HSBC's reformation claim is well founded. The Court shall enter a judgment in recordable form that reforms the 621 Assignment, the 638 Assignment and the Prior Lienholder's Agreement to correct and reform such documents to cor-

rectly reflect the 1601 Mortgage book and page number rather than the 1632 Mortgage book and page number.

◼ Similarly, the 1601 Satisfaction is a wild satisfaction. Any party searching the title records would be placed on inquiry notice to determine what obligation was being satisfied, and would conclude that the party that executed the 1601 Satisfaction was not the owner of the 1601 Mortgage at the time that it was executed. The existence of the 1601 Satisfaction would not result in a good faith purchaser for value's taking title to the Property free and clear of the 1601 Mortgage. Accordingly, the Court's judgment will state that the 1601 Satisfaction was a wild satisfaction and of no force and effect.

### B. *Judicial Estoppel Does Not Bar HSBC from Enforcing the 1632 Note and 1632 Mortgage.*

◼ The Debtor asserts that judicial estoppel bars HSBC from asserting that it owns and has the right to enforce the 1632 Note and the 1632 Mortgage because Ciena claimed to own them in the Foreclosure Suit and ultimately obtained an order appointing a receiver for the Debtor. The standard for determining whether a court should invoke the doctrine of judicial estoppel is whether an inconsistent position was made under oath in a prior proceeding and whether the inconsistency was calculated to make a mockery of the judicial system. *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.2002). In that case, the Eleventh Circuit referred to factors used by the United States Supreme Court. First, whether the present position is "clearly inconsistent" with the earlier position; second, whether the parties "succeeded in persuading a tribunal to accept the earlier position;" and third, whether the party "advancing the inconsistent posi-

tion would derive an unfair advantage on the opposing party." *Id.* at 1285.

◼◼◻ The Court finds that Ciena's position in this adversary proceeding is not "clearly inconsistent" with the earlier position taken by it in the Foreclosure Suit. A servicing agent has standing to prosecute a foreclosure case on behalf of the principal. *Mortgage Electronic Registration Systems v. Azize,* 965 So.2d 151 (Fla. 2d DCA 2007) (court held that a party who was not the beneficial owner of a mortgage had standing to foreclose upon the mortgage); *Taylor v. Deutsche Bank Nat. Trust Co.,* 44 So.3d 618 (Fla. 5th DCA 2010) (Florida Rules of Civil Procedure allow an action to be prosecuted for someone acting for the real party in interest). And even if this were not the case, HSBC was substituted as the Plaintiff in the Foreclosure Suit for Ciena.

◼ Second, while there may be an inconsistency with Ciena's taking the position that it was the owner of the 1632 Note in the Foreclosure Suit, Ciena did not succeed in persuading a tribunal to accept the earlier position because the appointment of a receiver is an interim order to maintain the *status quo* pending determination on the merits rather than a decision on the merits itself.

Third, the Court finds that HSBC does not derive an unfair advantage on the Debtor by HSBC's now having established that it is the owner of the 1632 Note and 1632 Mortgage. This is because the Debtor does not dispute the execution of the 1632 Note and the 1632 Mortgage and does not dispute that it received the loan proceeds. Accordingly, there is no prejudice to the Debtor if the actual ownership of the 1632 Note and the 1632 Mortgage is clarified.

Lastly, even if the Court were to find that judicial estoppel applies, HSBC would

not be estopped from asserting its interest in the 1632 Note and the 1632 Mortgage because Ciena had previously taken an inconsistent position. The Court finds that judicial estoppel does not preclude HSBC from enforcing the 1632 Note and the 1632 Mortgage.

### C. HSBC Is Entitled to Summary Judgment on Debtor's Complaint.

*Debtor May Not Avoid HSBC's Liens under Chapter 5. (Counts III, IV and V)*

In Counts III, IV and V of the Amended Complaint, the Debtor seeks to avoid HSBC's liens under Chapter 5 of the Bankruptcy Code as preferential, fraudulent and/or post-petition transfers. Avoidance of transfers under Chapter 5 requires that the transfer sought to be avoided be of an "interest of the debtor in property" (Sections 547 and 548) or of property of the estate (Section 549).

Section 541 broadly defines "property of the estate" to include all legal or equitable interests of the debtor in property as of the commencement of the case. The Eleventh Circuit addressed the scope of Section 541 in *Kapila v. Atlantic Mortgage and Investment Corp.*, 184 F.3d 1335 (11th Cir.1999). In that case, the court found that the assignment of a perfected mortgage was not a transfer of property of the estate under Section 541 because a perfected mortgage is neither actually nor potentially the property of the debtor. In *Kapila*, the court concluded that a trustee is not authorized to challenge the assignment of a perfected mortgage because a bankruptcy trustee's powers (or, in this case, a debtor-in-possession's powers) to avoid transfers under Chapter 5 of the Bankruptcy Code are limited to actual or potential property of the bankruptcy estate as defined by Section 541.

In this case, it is an undisputed fact that both the 1601 Mortgage and the 1632

Mortgage were properly perfected prior to the filing of this bankruptcy. Independent of any issues arising from the assignment of the 1601 and 1632 Notes and Mortgages, there is no question that the mortgages on the loans were properly perfected. The Court finds that the assignment of a perfected mortgage is not a transfer of property of the estate under Section 541 of the Bankruptcy Code, and therefore the Debtor is not authorized under the Bankruptcy Code to avoid transfers under 548, 547, or 549. Accordingly, the Court will grant summary judgment in favor of HSBC on Counts III, IV and V.

*Debtor Lacks Standing to Assert a Claim Under of Fla. Stat. § 701.02. (Count II)*

As to Count II, the Debtor raised the issue of HSBC's violation of Fla. Stat. § 701.02. The Eleventh Circuit also addressed this statute in the *Kapila* case and affirmed the bankruptcy court's holding that Fla. Stat. § 701.02's recording requirements are applicable only, and enforceable only, by competing creditors or subsequent *bona fide* purchasers of the mortgagee, not by the mortgagor. *Id.* at 1338. In finding in that case that the trustee did not have standing to avoid a mortgage under Fla. Stat. § 701.02, the Eleventh Circuit stated,

> From the point of view of the mortgagor or someone standing in his shoes, a subsequent assignment of the mortgagee's interest—whether recorded or not— does not change the nature of the interest of the mortgagor or someone claiming under him. Nor should a failure to record any subsequent assignment afford the mortgagor or the trustee standing in his shoes an opportunity to avoid the mortgage.

*Id.*

Because the Court finds the *Kapila* case applicable to Count II of the Amended

Complaint, the Court finds that the Debtor lacks standing to assert this claim and will grant HSBC's Motion for Summary Judgment as to Count II.

*HSBC Is Entitled to Enforce the Subject Mortgages. (Count VII)*

■ In Count VII of the Complaint, the Debtor seeks a determination that HSBC is not a holder in due course and thus may not enforce the 1601 and 1632 Mortgages. As a threshold matter, the Court finds that HSBC does not need to establish that it is a holder in due course in order to enforce the mortgages.[4]

Fla. Stat. § 673.3011 states:

The term "person entitled to enforce" an instrument means:

(1) the holder of the instrument;

(2) a nonholder in possession of the instrument who has the rights of a holder; or

(3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 673.3091 or Section 673.4181.

*A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.*

(Emphasis supplied.)

■ "Because a promissory note is a negotiable instrument, and because a mortgage provides the security for the repayment of the note, this statute leads to the conclusion that the person having standing to foreclose a note secured by a mortgage may be either the holder of the note or a nonholder in possession of the note who has the rights of a holder." *Taylor v. Deutsche Bank Nat. Trust Co.*, 44 So.3d 618, 622 (Fla. 5th DCA 2010). The

*Taylor* court rejected the proposition that only a holder in due course can enforce a negotiable instrument:

Thus, Mr. Taylor's foundational argument—that only a holder in due course can enforce the note by foreclosing the mortgage—is flawed in a significant way. The statute allows a nonholder with certain specific characteristics to foreclose as well.

... As a general proposition, evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer, is required to prove that a party validly holds the note and mortgage it seeks to foreclose.

*Id.*

With respect to the 1601 Mortgage, the record reflects that the 1601 Note and Mortgage were made payable to BLX, that the parties to the 621 Assignment intended that the 1601 Note and 1601 Mortgage be assigned from BLX to the FBDC, that the FBDC intended the 638 Assignment to assign its interest in the Renewal Note, the 1601 Note, and the 1601 Mortgage to the SBA, and that the SBA has, by its assignment of its proof of claim, as attested to by the affidavit of the SBA (Adv. Doc. No. 106, Ex. 3) assigned its interest in the Renewal Note, the 1601 Note and 1601 Mortgage to HSBC.

With respect to the 1632 Note and 1632 Mortgage, the record reflects that they were made payable to BLX, that BLX assigned them to BLC, that BLC assigned them to HSBC as Trustee of the 2004 Trust. Then, pursuant to a Sale and Servicing Agreement, the note and mortgage were transferred to HSBC as Indentured Trustee for the 2005–A Trust.

---

4. The Court acknowledges the decision in *Kemp v. Countrywide Home Loans, Inc.*, 440 B.R. 624 (Bankr.N.J.2010). This Court does not agree with the conclusions reached by that court under the facts and circumstances of this case.

The affidavits filed by HSBC in support of its Motion for Summary Judgment establish that consideration was paid for the mortgages and that HSBC is, at the very least, a nonholder in possession who has the rights of a holder and is entitled to enforce the 1601 and 1632 Mortgages.

The Court acknowledges the Debtor's argument that HSBC has not established that it is, in fact, the Indentured Trustee and thus has standing to enforce the subject mortgages. However, the fact remains that HSBC is in actual physical possession of the 1601 Note and Mortgage and the 1632 Note and Mortgage. And, despite the fact that the Debtor's Chapter 11 case has now been pending for over a year, no other party has asserted an ownership interest in the notes and mortgages. Accordingly, the Court grants HSBC's Motion for Summary Judgment as to Count VII.

*Debtor's Claims in Counts I, VI and VIII Are Dependent upon Its Other Claims.*

The Debtor's claims in Counts I, VI and VIII are essentially objections to HSBC's Claim No. 8 and Claim No. 9 based on the same theories raised in the Debtor's other claims for relief.

In Count I, the Debtor seeks a determination that there is no value to HSBC's secured claims. Because the Court has found for HSBC on the other substantive counts, the Court grants summary judgment in favor of HSBC. The Court notes that it has already determined the value of the Property in the main bankruptcy case and will apply that valuation to this adversary proceeding.

In Count VI, the Debtor seeks a determination of the value of HSBC's secured claims and the avoidance of its alleged liens pursuant to Section 502. This claim for relief is essentially an objection to HSBC's claims and, for the reasons set forth above, the Court grants summary judgment in favor of HSBC and sets the value of HSBC's liens as determined in the main bankruptcy case.

In Count VIII, the Debtor seeks to quiet title as to the Property. Because of the Court's rulings on the Debtor's substantive claims for relief, the Court grants summary judgment for HSBC as to Count VIII.

## D. CONCLUSION

For the foregoing reasons, the Court shall enter a separate judgment in favor of HSBC on Counts I through VIII of the Amended Complaint, denying the relief sought by the Debtor, and in favor of HSBC granting it the relief prayed for in its Amended Counterclaim and Third Party Complaint.

**DONE AND ORDERED.**